# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIELLE HENKEL**, *on behalf of herself and all others similarly situated*<br>16 Eleanors Ln.<br>Boyertown, PA 19512,<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION**<br>400 Maryland Ave. SW<br>Washington, DC 20202,<br><br>*Defendant.* | **Civil Action No.** 1:24-cv-1676<br><br>**CLASS ACTION COMPLAINT** |

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Danielle Henkel brings this lawsuit on behalf of herself and federal student loan borrowers like her because of Defendant's widespread violations of section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.    Defendant, a federal agency, regularly provides information about student loan borrowers' account balances and repayment history to consumer reporting agencies (singular, "CRA").

3.    For example, on Plaintiff's credit reports, information about her federal student loans through the Department of Education appears as being furnished by "Dept of Ed/Nelnet" and "DEPARTMENT OF EDUCATION/NELN."

4.    Nelnet is an entity with which Defendant contracts for the servicing of certain federal student loans such as Plaintiff's.

5. Defendant uses other agents as well for furnishing credit information to CRAs about federal student loans. For example, information about another of Plaintiff's federal student loans is listed on her credit report as being furnished by "Dept of Ed/Aidvantage" and information about another is listed as being furnished by "MOHELA/DEPT OF ED."

6. Nelnet and other agents must follow Defendant's instructions with respect to reporting federal student loan information. Indeed, in correspondence to Plaintiff dated January 25, 2024, Nelnet stated that, "[o]n behalf of ED [the Department of Education], we must furnish your account data to the CRAs."

7. As a general matter, Defendant requires the furnishing of information about federal student loans to CRAs and controls the manner and content of said furnishing either directly or through its agents.

8. According to the Consumer Reporting Resource Guide, the credit reporting industry's definitive guidelines for furnishers of credit information published by the Consumer Data Industry Association ("CDIA"), "[r]eporters of federal student loan information include lenders, servicers, secondary markets, collection agencies and the U.S. Department of Education ("ED")."[1]

9. As Defendant knows or should know, after it transfers the servicing of student loan accounts from one servicer to another, no money remains owing to the first servicer, which should report a $0 balance to the CRAs for those accounts.

---

[1] CONSUMER DATA INDUSTRY ASSOCIATION, *Consumer Reporting Resource Guide*, at 12-2, 2022.

10. Instead, when it transfers the servicing of student loan accounts from one servicer to another, Defendant directs the original servicer to place a "suppression" on the account.

11. Defendant's suppression causes the original servicer to continue to report the pre-servicing transfer account balance to the CRAs instead of a $0 balance, as should be reported under industry-standard credit reporting procedures in order to avoid the duplicate reporting of accounts.

12. Later, when borrowers like Plaintiff see their transferred federal student loans on their credit reports with balances allegedly owing to Defendant via two separate servicers, they often exercise their rights under the FCRA to dispute the erroneous balance information which Defendant causes to be double reported.

13. Even upon notice of a dispute through one or more CRAs, pursuant to standardized FCRA dispute processing procedures, Defendant and/or its agents routinely and as a matter of practice fails to reduce the nonexistent balances of transferred federal student loans to $0 and continues to report the pre-transfer balances as open and owing.

14. As a result of Defendant's conduct, Plaintiff and members of the Class she seeks to represent falsely appear on their credit reports to owe double the amount of federal student loan debt and suffer injury and damages in the form of harm to credit reputation and credit score, lost credit opportunities, and waste of time and resources lodging futile disputes and trying to correct Defendant's false credit reporting.

15. Defendant has long been aware of the problem of reporting a non-zero balance after the servicing transfer of federal student loans. Indeed, this problem has garnered the attention of the Consumer Financial Protection Bureau and the media. According to recent reporting in the Washington Post,[2] Defendant said it "has received about 500 credit reporting complaints since December" concerning the reporting of student loan balances not owed to the reporting servicer.

16. Federal agencies that participate in the furnishing of information to CRAs may be sued under the FCRA. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42, 64, (2024) ("A consumer may sue 'any' federal agency for defying the [FCRA]'s terms.").

17. Defendant's common course of conduct and legal violations entitle Plaintiff and those she seeks to represent to statutory damages, actual damages, punitive damages, and attorneys' fees and costs under the FCRA.

## II.     JURISDICTION & VENUE

18. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

19. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is located in this District.

---

[2]     Danielle Douglas-Gabriel, *How a paperwork glitch is hurting student loan borrowers' credit scores*, THE WASHINGTON POST, May 29, 2024, *available at* https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.

## III.     THE PARTIES

20.     Plaintiff Danielle Henkel is a natural person and resident of Pennsylvania. At all relevant times, she was a "consumer" as defined by FCRA section 1681a(c).

21.     Defendant United States Department of Education is a federal agency. Its headquarters are located at 400 Maryland Ave SW, Washington, D.C. At all relevant times, Defendant was a credit furnisher and "person" as defined by FCRA section 1681a(b).

## IV.     FACTUAL ALLEGATIONS

*Applicable Legal Framework*

22.     "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

23.     FCRA-covered entities must follow procedures in reporting consumer credit information that both "meet[ ] the needs of commerce" and are "fair and equitable to the consumer." *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).

24.     In addition to well-known CRAs like Equifax, Experian, Trans Union, and Innovis, the FCRA regulates the conduct of "furnishers of information," entities that provide—or "furnish"—information about consumers to CRAs.

25. If a consumer disputes "the completeness or accuracy of any item of information contained in [his or her] file at a [CRA]," the FCRA requires the CRA to take several affirmative steps. *See* 15 U.S.C. § 1681i(a)(1)(A).

26. Relevant here, the CRA that receives the consumer's dispute must "provide notification of the dispute to [the furnisher] who provided any item of information in dispute" [to the CRA] and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

27. After receiving notice of the consumer's dispute from the CRA, a furnisher such as Defendant must "conduct an investigation with respect to the disputed information[,] . . . review all relevant information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s 2(b)(1)(A)-(C).

28. The FCRA accordingly requires that a furnisher of credit information such as Defendant to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Saunders*, 526 F.3d at 148 (the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'") (citation omitted).

29. If the disputed information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify

6

that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s 2(b)(1)(E)(i)-(iii).

30. Furthermore, "[i]f the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2b(a)(3).

31. Circuit courts have repeatedly held that, upon receipt of notice of a dispute through a CRA, a furnisher must correct inaccurate information and minimally mark disputed accounts as "disputed." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) (citing *Saunders*, 526 F.3d at 150); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (a furnisher violates FCRA section 1681s-2(b) "when, having received notice of a consumer's potentially meritorious dispute, [it] subsequently fails to report that the claim is disputed.").

32. The complete and accurate furnishing of information about consumers is important because even small errors can disproportionately influence the cost of certain services, such as mortgages, automobile loans, and credit cards.

33. Relatedly, designating disputed information as "disputed" is similarly important because "when a furnisher responds to a dispute verification form and relates an ongoing dispute, [a CRA] does not include the derogatory information in assessing the credit score." *Saunders*, 526 F.3d at 150.

*Defendant's FCRA-Regulated Conduct*

34. Defendant is a federal agency tasked with, *inter alia*, overseeing various federal student loan programs, including that pursuant to which Plaintiff took out loans to finance her education.

35. In the normal course of business, Defendant maintains detailed business records concerning, *inter alia*, student loan borrowers' account balances and repayment histories ("Student Loan Information").

36. Defendant routinely furnishes Student Loan Information to CRAs, including Experian, Equifax, and Trans Union, either directly or indirectly through its servicers, making it a "furnisher of information" as contemplated by the FCRA.

37. Defendant routinely transfers the servicing of federal student loans to other entities for various reasons, including for the purpose of evaluating borrowers' eligibility for Total and Permanent Disability discharge and the Public Service Loan Forgiveness program, among other federal programs.

*Plaintiff's Experience*

38. Many years ago, Plaintiff obtained federal student loans to finance her education. By late 2021, she had either paid off her outstanding loan balances or consolidated any outstanding loans into two direct consolidation loans from Defendant in the amounts of $28,772.91 and $39,733.97, respectively.

39. Until approximately June 2023, Defendant's agent Nelnet was the servicer of Plaintiff's federal student loans. During this period, Defendant furnished and/or caused to be furnished information about Plaintiff's federal student loans to

8

CRAs Experian, Equifax, and TransUnion each month as "DEPARTMENT OF EDUCATION/NELNET" and similar variations, depending upon the abbreviations adopted by the CRA to which Defendant furnished the information.

40. In early 2023, Plaintiff made an application for forgiveness of her loans from Defendant through the Public Service Loan Forgiveness ("PSLF") program.

41. At that time, the outstanding principal balance on Plaintiff's loans from Defendant was approximately $68,500.

42. Defendant, at its sole discretion, routinely transfers the servicing of federal student loans like Plaintiff's from one servicer to another.

43. Defendant transferred Plaintiff's loan servicing from Nelnet to the Missouri Higher Education Loan Authority ("MOHELA").

44. Nelnet confirmed this in correspondence dated May 25, 2023, when it notified Plaintiff of the following:

> The U.S. Department of Education (ED) will soon transfer the customer service of your federal student loan account to MOHELA, another member of ED's federal loan servicer team. Your loans are not being sold. ED will continue to own your loans; however, a different servicer will manage your loans and assist you on ED's behalf.
>
> ED is transferring your loan account to MOHELA because you requested to participate in the Public Service Loan Forgiveness (PSLF) Program. MOHELA is ED's servicer that provides customer service for all federal student loan borrowers who are potentially eligible for PSLF and tracks their progress toward qualifying for PSLF. This change in servicer will not impact the existing terms, conditions, interest rate, or available repayment plans of your federal student loans.
>
> Your loan account will be transferred to MOHELA on or about June 8, 2023. If ED doesn't transfer your account as planned, we'll let you know.

9

45. After Defendant transferred the servicing of Plaintiff's student loan account from Nelnet to MOHELA, Plaintiff's Nelnet account was closed and MOHELA opened a new account for Plaintiff with a new loan number.

46. Accordingly, Defendant should have reported to the CRAs that the balances of Plaintiff's transferred student loan account at Nelnet was $0.

47. Instead, Defendant continued to report or caused to be reported to the CRAs that the balance of Plaintiff's student loan account at Nelnet was $68,505.

48. In January of 2024, Plaintiff reviewed her credit reports and discovered that Defendant, as DEPARTMENT OF EDUCATION/NELNET (or similar) was still reporting that she had an open student loan account with a balance of approximately $68,505.

49. Simultaneously, Defendant, as "MOHELA/DEPT OF ED" (or similar) was reporting that Plaintiff had an *additional* federal student loan account due to Defendant with a total balance of approximately $68,548.

50. That is, notwithstanding having itself transferred Plaintiff's single loan account with a balance of $68,505 from Nelnet to MOHELA, Defendant furnished and/or caused to be furnished information to the CRAs, including Experian, Equifax, and TransUnion, that Plaintiff owed it more than $137,000 in total.

51. This was false. Plaintiff no longer had any open student loan accounts with Nelnet and did not owe it any amount for a student loan.

52. Indeed, in correspondence after the transfer to MOHELA, Nelnet stated that the balance of Plaintiff's student loans was $0.

53. As Defendant had transferred Plaintiff's loan account to MOHELA, it should only have reported to the CRAs that Plaintiff owed money to it pursuant to a single account, not two separate accounts with two separate servicers.

54. Plaintiff disputed Defendant's false, duplicative balance reporting through the CRAs, including Experian, Equifax, and TransUnion throughout 2023 and 2024.

55. Pursuant to the CRAs' independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), the CRAs provided notice of Plaintiff's disputes to Defendant and/or its servicing agents.

56. Nevertheless, in its responses to Plaintiff's disputes through the CRAs, Defendant directly and/or through its agents repeatedly failed to correct or reduce the duplicative balance to $0 and to fulfill its other obligations under FCRA section 1681s-2(b). Instead, it continued to verify that Plaintiff owed it more than $137,000 in federal student loans, including approximately $68,505 through Nelnet.

57. Plaintiff also sent complaints about Defendant's duplicative credit reporting to the Better Business Bureau and the Federal Student Aid Ombudsman Group in January of 2024 to which Nelnet responded on Defendant's behalf.

58. In correspondence dated January 25, 2024 in which it referred to Defendant as "ED," Nelnet responded as follows:

> On behalf of ED, we must furnish your account data to the CRAs. Under the Fair Credit Reporting Act, we have an obligation to ensure the data we furnish is accurate and complete. Because the account has transferred to another ED servicer, <u>a suppression has been added to the</u>

11

account, at the direction of ED. Nelnet has not actively furnished any data to the CRAs since May 31, 2023. Once we receive direction from ED to remove the suppression, we will furnish data reflecting that your account has a $0.00 balance and was transferred to another entity. (emphasis added).

59. Nelnet repeated the "suppression" explanation in subsequent communications with Plaintiff dated January 26, 2024, January 30, 2024, and February 1, 2024.

60. Plaintiff repeatedly requested an explanation of the "suppression" Defendant added to her account, but Nelnet never provided it.

61. Plaintiff also contacted MOHELA, hoping for a resolution of Defendant's duplicative credit reporting. In correspondence dated February 5, 2024, MOHELA responded as follows:

> Our records indicate, an update from your prior servicer to the Credit Reporting Agencies (CRAs) is necessary. Please contact Nelnet and request a credit review in order to initiate or expedite their update to the CRAs. Nelnet's customer service phone number is 888-486-4722. Once the update is submitted, MOHELA will then be able to update your reporting with the CRAs properly on our end. We understand your frustration in this matter and we thank you for your patience.

62. As a result of Defendant's conduct, Plaintiff and members of the Class appeared on their credit reports to owe to Defendant far more in federal student loans than they actually did (usually double the amount actually owed), and thus suffered injury and damages in the form of lost credit opportunities, harm to credit reputation and credit score, and waste of time and resources.

63. At all relevant times, Defendant acted through its duly authorized agents, and/or employees with respect to the above-alleged conduct.

64. At all relevant times, Defendant willfully or negligently violated the requirements of FCRA section 1681s-2(b).

## V. CLASS ALLEGATIONS

65. Plaintiff seeks to represent the following Class:

### Suppression Class

For the period beginning two years prior to the filing of the complaint in this matter until the date of the Court's class certification Order, individuals with an address in the United States and its Territories who (1) had account(s) for federal student loan(s); (2) on which account(s) Defendant placed a suppression after transferring the loan(s) from one servicer to another servicer; and (3) during the period in which its suppression was in effect, the borrower disputed the reporting of the pre-transfer account(s) through a CRA; but (4) in responding to the CRA's notice of dispute, Defendant and/or its agents failed to report a $0 balance for the pre-transfer account(s) or update the balance of the pre-transfer loan account(s) to $0.

66. Plaintiff reserves the right to amend the above definition based upon developments in discovery or as otherwise appropriate and permitted.

67. Members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that they minimally number in the hundreds.

68. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions concern whether Class members disputed inaccurate information that Defendant had furnished to a CRA about them; whether Defendant failed to correct the disputed information; whether Defendant failed to instruct the CRA to mark the disputed information as "disputed;" whether Defendant's conduct was

negligent, willful, or reckless; and whether members of the Class are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

69. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

70. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are experienced in handling FCRA and other consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

71. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

72. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## VI. CLAIMS FOR RELIEF

### COUNT ONE
### On Behalf of Plaintiff and Members of the Class
### for Defendant's Violation of 15 U.S.C. § 1681s-2(b)

73. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

74. After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of inaccurate information that Defendant and/or its agents had previously furnished to the CRA about them, Defendant and/or its agents negligently or willfully failed to report a $0 balance, correct the inaccurate information, and fulfill all of its duties under FCRA section 1681s-2(b).

75. Defendant is liable to Plaintiff and members of the Class for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII. JURY TRIAL DEMAND

76. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant her and members of the Class the following relief:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent them;

B. awarding actual damages pursuant to 15 U.S.C. § 1681n(a) & o(a);

C. awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a);

D. awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.   awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

F.   awarding such other and further relief as may be necessary, just, and proper.

Dated:   June 7, 2024                    Respectfully submitted,

DANIELLE HENKEL, *individually, and on behalf of all others similarly situated*,

By:   */s/ Courtney L. Weiner*
Courtney L. Weiner (#992797)
LAW OFFICE OF COURTNEY WEINER PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
T: (202) 827-9980
cw@courtneyweinerlaw.com

James A. Francis (*pro hac vice* forthcoming)
John Soumilas (*pro hac vice* forthcoming)
Jordan M. Sartell (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*Attorneys for Plaintiff*