**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIELLE HENKEL**, *on behalf of herself and all others similarly situated,* | |
| *Plaintiff,* | Civil Action No. 1:24-cv-01676-ABJ |
| v. | **AMENDED CLASS ACTION COMPLAINT** |
| **UNITED STATES DEPARTMENT OF EDUCATION**, | |
| *Defendant.* | |

Formatted: Font: Not Bold

## I.     PRELIMINARY STATEMENT

1.     Plaintiff Danielle Henkel brings this lawsuit on behalf of herself and federal student loan borrowers like her because of Defendant's widespread violations of section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.     Defendant, a federal agency, that regularly, directly and/or indirectly, provides information about student loan borrowers' account balances and repayment history to consumer reporting agencies (singular, "CRA").

3.     For example, on Plaintiff's credit reports, information about her federal student loans through the Department of Education appears as being furnished by "Dept of Ed/Nelnet" and "DEPARTMENT OF EDUCATION/NELN."

4.     Nelnet is an entity with which Defendant contracts for the servicing of certain federal student loans such as Plaintiff's.

5.     Defendant uses other agents as well in connection with its furnishing of credit information to CRAs about federal student loans. For example, information

about another of Plaintiff's federal student loans is listed on her credit report as being furnished by "Dept of Ed/Aidvantage" and information about another is listed as being furnished by "MOHELA/DEPT OF ED."

6.    Nelnet and other agents must follow Defendant's instructions with respect to reporting federal student loan information. Indeed, in correspondence to Plaintiff dated January 25, 2024, Nelnet stated that, "[o]n behalf of ED [the Department of Education], we must furnish your account data to the CRAs."

7.    As a general matter, Defendant requires the furnishing of information about federal student loans to CRAs and controls the manner and content of said furnishing ~~either~~ directly and/or through its agents.

8.    According to the Consumer Reporting Resource Guide, the credit reporting industry's definitive guidelines for furnishers of credit information published by the Consumer Data Industry Association ("CDIA"), "[r]eporters of federal student loan information include lenders, servicers, secondary markets, collection agencies and the U.S. Department of Education ("ED")."[1]

9.    As Defendant knows or should know, after it transfers the servicing of student loan accounts from one servicer to another, no money remains owing to the first servicer, which should report a $0 balance to the CRAs for those accounts.

10.    Instead, when it transfers the servicing of student loan accounts from one servicer to another, Defendant directs the original servicer to place a "suppression" on the account.

---

[1]    CONSUMER DATA INDUSTRY ASSOCIATION, *Consumer Reporting Resource Guide*, at 12-2, 2022.

11.    Defendant's suppression causes the original servicer to continue to report the pre-servicing transfer account balance to the CRAs instead of a $0 balance, as should be reported under industry-standard credit reporting procedures in order to avoid the duplicate reporting of accounts.

12.    Later, when borrowers like Plaintiff see their transferred federal student loans on their credit reports with balances allegedly owing to Defendant via two separate servicers, they often exercise their rights under the FCRA to dispute the erroneous balance information which Defendant causes to be double reported.

13.    Even upon direct and/or indirect notice of a dispute through one or more CRAs, pursuant to standardized FCRA dispute processing procedures, Defendant directly and/or indirectly through its agents routinely and as a matter of practice fails to reduce the nonexistent balances of transferred federal student loans to $0 and continues to report the pre-transfer balances as open and owing.

14.    As a result of Defendant's conduct, Plaintiff and members of the Class she seeks to represent falsely appear on their credit reports to owe double the amount of federal student loan debt and suffer injury and damages in the form of harm to credit reputation and credit score, lost credit opportunities, and waste of time and resources lodging futile disputes and trying to correct Defendant's false credit reporting.

15.    Defendant has long been aware of the problem of reporting a non-zero balance after the servicing transfer of federal student loans. Indeed, this problem has garnered the attention of the Consumer Financial Protection Bureau and the media.

According to recent reporting in the Washington Post,[2] Defendant said it "has received about 500 credit reporting complaints since December" concerning the reporting of student loan balances not owed to the reporting servicer.

16.    Federal agencies that participate in the furnishing of information to CRAs may be sued under the FCRA. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 64, (2024) ("A consumer may sue 'any' federal agency for defying the [FCRA]'s terms.").

17.    Defendant's common course of conduct and legal violations entitle Plaintiff and those she seeks to represent to statutory damages, actual damages, punitive damages, and attorneys' fees and costs under the FCRA.

## II.    JURISDICTION & VENUE

18.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

19.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is located in this District.

**Formatted:** Font: Century Schoolbook

## III.    THE PARTIES

20.    Plaintiff Danielle Henkel is a natural person and resident of Pennsylvania. At all relevant times, she was a "consumer" as defined by FCRA section 1681a(c).

---

[2]    Danielle Douglas-Gabriel, *How a paperwork glitch is hurting student loan borrowers' credit scores*, The Washington Post, May 29, 2024, *available at* https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.

21.    Defendant United States Department of Education is a federal agency. Its headquarters are located at 400 Maryland Ave SW, Washington, D.C. At all relevant times, Defendant was a credit furnisher and "person" as defined by FCRA section 1681a(b).

22.    Defendant is the creditor of Plaintiff and those she seeks to represent in this matter with respect to certain federal student loans.

23.    Defendant, directly and/or indirectly through various agents, furnishes and/or causes to be furnished information about federal student loan borrowers, including Plaintiff and those she seeks to represent, to one or more consumer reporting agencies.

24.    Defendant owns and controls the information furnished about Plaintiff and those she seeks to represent. To the extent that Defendant's various agents are involved in the flow of information about federal student loan borrowers to and from consumer reporting agencies, its agents have no discretion over how to report, update, correct, or cease the reporting of said information. Rather, with respect to loans transferred from one servicer to another and other reporting, they must obtain Defendant's approval prior to initiating any update, correction, or cessation of the reporting of the information.

5

## IV.  FACTUAL ALLEGATIONS

### *Applicable Legal Framework*

~~22.~~25. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

~~23.~~26. FCRA-covered entities must follow procedures in reporting consumer credit information that both "meet[ ] the needs of commerce" and are "fair and equitable to the consumer." *Saunders v. Branch Banking and Tr. Co. of Virgnia*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).

~~24.~~27. In addition to well-known CRAs like Equifax, Experian, Trans Union, and Innovis, the FCRA regulates the conduct of ~~"furnishers of~~persons who furnish information~~," entities that provide or "furnish" information about~~ relating to consumers to CRAs.

~~25.~~28. If a consumer disputes "the completeness or accuracy of any item of information contained in [his or her] file at a [CRA]," the FCRA requires the CRA to take several affirmative steps. *See* 15 U.S.C. § 1681i(a)(1)(A).

~~26.~~29. Relevant here, the CRA that receives the consumer's dispute must "provide notification of the dispute to [the furnisher] who provided any item of information in dispute" [to the CRA] and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

27.30. After receiving notice of the consumer's dispute from the CRA, a furnisher such as Defendant must "conduct an investigation with respect to the disputed information[,] . . . review all relevant information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s–2(b)(1)(A)-(C).

28.31. The FCRA accordingly requires that a furnisher of credit information such as Defendant to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Saunders*, 526 F.3d at 148 (the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'") (citation omitted).

29.32. If the disputed information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s 2(b)(1)(E)(i)-(iii).

30.33. Furthermore, "[i]f the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2b(a)(3).

31.34. Circuit courts have repeatedly held that, upon receipt of notice of a dispute through a CRA, a furnisher must correct inaccurate information and minimally mark disputed accounts as "disputed." *See Gorman v. Wolpoff &*

*Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) (citing *Saunders*, 526 F.3d at 150); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (a furnisher violates FCRA section 1681s-2(b) "when, having received notice of a consumer's potentially meritorious dispute, [it] subsequently fails to report that the claim is disputed.").

~~32.~~35. The complete and accurate furnishing of information about consumers is important because even small errors can disproportionately influence the cost of certain services, such as mortgages, automobile loans, and credit cards.

~~33.~~36. Relatedly, designating disputed information as "disputed" is similarly important because "when a furnisher responds to a dispute verification form and relates an ongoing dispute, [a CRA] does not include the derogatory information in assessing the credit score." *Saunders*, 526 F.3d at 150.

*Defendant's FCRA-Regulated Conduct*

~~34.~~37. Defendant is a federal agency tasked with, *inter alia*, overseeing various federal student loan programs, including that pursuant to which Plaintiff took out loans to finance her education.

38.    In its standard promissory notes with borrowers, Defendant defines itself to include its servicers.

39.    Defendant enters into contracts ("Servicing Contracts") with each servicer, including Nelnet, which governs the conducts of those servicers.

8

40.    The Servicing Contracts prescribe exactly how servicers must manage payments, data, correspondence, and other issues, reserving substantive decision-making authority with respect to student loans for Defendant.

41.    The Servicing Contracts require servicers to follow practices that comport with federal law and regulations.

35.42. In the normal course of business, Defendant maintains detailed business records concerning, *inter alia*, student loan borrowers' account balances and repayment histories ("Student Loan Information").

43.    The Servicing Contracts specify that Defendant retains full ownership and control over all Student Loan Information:

> It is understood and mutually agreed that the Department of Education has exclusive ownership of all information stored in, retrieved, modified, and/or archived in as part of this service. The contractor shall have no rights in such information and no rights to such information shall vest on the contractor by virtue of its performance of this contract. No other party has the right to copy, delete, archive, or transfer such information without the prior express written consent of the Department of Education. The contractor shall not use such information for any marketing or solicitation purpose including, but not limited to, commercial advertising, credit offers, or similar campaigns.

https://studentaid.gov/sites/default/files/nelnet-061709.pdf, at C.1.4.6.

36.44. In the normal course, Defendant routinely furnishes Student Loan Information to CRAs, including Experian, Equifax, and Trans Union, either directly and/or indirectly through its servicers, making it a "furnisher of information" as contemplated by the FCRA.

45.    Indeed, federal law requires that Defendant "enter into an agreement with each consumer reporting agency to exchange information concerning student

9

borrowers," including, but not limited to: "the total amount of loans made to any borrower . . . and the remaining balance of the loans;" and "information concerning the repayment status of the loan for inclusion in the file of the borrower[,]" 20 U.S.C. § 1080a(a)(2), (3).

46.    These agreements "shall contain such provisions as may be necessary to ensure that . . . no information is disclosed by the Secretary or the guaranty agency, eligible lender, or subsequent holder unless its accuracy and completeness have been verified[,]" 20 U.S.C. § 1080a(c)(1).

47.    Mindful of the importance of the vital protections afforded to student borrowers by the FCRA, Congress explicitly stated that, "nothing in this subsection shall be construed to affect any otherwise applicable provision of the Fair Credit Reporting Act[,]" 20 U.S.C. § 1080a(a)(3).

48.    Defendant requires that its servicers, including Nelnet, communicate Student Loan Information to CRAs using the METRO 2 format, a system of segments, fields, codes, and information unique to the credit reporting industry.

49.    Defendant, directly and/or indirectly through its agents, provide information, including the Student Loan Information, in the METRO 2 format so it can be received by the CRAs' systems, interpreted by those systems, and incorporated into the credit files of specific consumers for use in credit reporting.

50.    Using different METRO 2 codes, Defendant, directly and/or indirectly through its agents, communicates several important pieces of information about

consumers' federal student loan accounts, each of which is referred to as a "tradeline" in credit reporting jargon.

51.    Certain codes identify the type of account at issue and enable the receiving CRAs to distinguish among, for example, mortgage, student loan, and credit card accounts.

52.    Other METRO 2 codes indicate whether a student borrower is current in their repayment of a federal student loan account or in arrears.

53.    CRAs understand Defendant's direct and/or indirect communications of Student Loan Information in the METRO 2 format to convey information relevant to the creditworthiness and credit reputations of the student borrowers about whom they furnishes information.

54.    Accordingly, CRAs incorporate the Student Loan Information they receive directly and/or indirectly from Defendant into student loan borrowers' credit files and use it to prepare and sell consumer reports about them.

55.    Actors in the credit industry rely on these consumer reports to accurately set forth consumers' outstanding debt, history of repayment, and other financial characteristics.

56.    In addition, federal regulations include specific requirements for how different Student Loan Information must be reported.

57.    For example, with respect to Borrower Defense to Repayment, the implementing regulations for the Higher Education Act provide that upon discharge of a borrower's obligations, "The Secretary also updates reports to consumer reporting

agencies to which the Secretary previously made adverse credit reports with regard to the borrower's Direct Loan." 34 C.F.R. § 685.206(e)(12).

58.    With respect to rehabilitated defaulted loans, the rules require that "the Secretary instructs any consumer reporting agency to which the default was reported to remove the default form the borrower's credit history." 34 C.F.R. § 685.211(f)(8).

59.    For loans subject to Closed School Discharge and discharge based on unauthorized payment, the regulation mandates that "[t]he Secretary reports the discharge of the loan under this section to all consumer reporting agencies to which the Secretary previously reported the status of the loan, so as to delete all adverse credit history assigned to the loan." 34 C.F.R. §§ 685.214(b)(4), 215(b)(5).

60.    Pursuant to federal requirements, Defendant does not report a Direct Loan as delinquent until it has reached 90 days past due. *See* https://nelnet. studentaid.gov/content/faq/faqcreditreporting. *See also* https://cri.studentaid.gov/ content/faq/faqcreditreporting.

61.    In the event of a dispute, the Direct Loan Promissory Note between Defendant and borrowers provides, "If a consumer reporting agency contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the agency with a prompt response. We respond to objections submitted to consumer reporting agencies using the methods established by those agencies." https://studentaid.gov/sites/default/files/ Sub_Unsub_MPN_508-en-us.pdf at § 19.

~~37.~~ 62. Defendant routinely transfers the servicing of federal student loans ~~to other entities~~ from one servicer to another for various reasons, including for the purpose of evaluating borrowers' eligibility for Total and Permanent Disability discharge and the Public Service Loan Forgiveness program, among other federal programs.

*Plaintiff's Experience*

~~38.~~ 63. Many years ago, Plaintiff obtained federal student loans to finance her education. By late 2021, she had either paid off her outstanding loan balances or consolidated any outstanding loans into two direct consolidation loans from Defendant in the amounts of $28,772.91 and $39,733.97, respectively.

~~39.~~ 64. Until approximately June 2023, Defendant's agent Nelnet was the servicer of Plaintiff's federal student loans. During this period, Defendant ~~furnished~~ directly and/or ~~caused to be~~ indirectly through its agents furnished information about Plaintiff's federal student loans each month to CRAs Experian, Equifax, and TransUnion ~~each month~~ as "DEPARTMENT OF EDUCATION/NELNET" and similar variations, depending upon the abbreviations adopted by the CRA to which Defendant directly and/or indirectly furnished the information.

65.   For example, on Plaintiff's personal credit report from TransUnion dated February 17, 2024, which states that account information appearing therein is

**DEPT OF ED / NELNET** #90000060987**** ( PO BOX 82561, LINCOLN, NE 68501, (888) 486-4722 )
Date Opened: 11/02/2021   Balance: $68,505   **Pay Status:** Current; Paid or Paying as Agreed
**Responsibility:** Individual Account   Date Updated: 05/31/2023   Terms: $0 per month, paid Monthly for 360 months
**Account Type:** Installment Account   Payment Received: $0
**Loan Type:** STUDENT LOAN   Last Payment Made: 05/11/2023
   High Balance: $68,505
**Remarks:** DISP INVG COMP-CONSUM DISAGRS

provided by "creditors" and lists those creditors by name, account number, and address, Defendant's account appeared as follows:

66.    This is not an aberration. Indeed, another one of Plaintiff's federal student loans from Defendant and serviced by Aidvantage, another of Defendant's agents, is identified as follows:

| DEPT OF ED/AIDV #92016655181E0022009**** ( 1891 METRO CENTER DR, RESTON, VA 20190, (800) 722-1300 ) | | |
|---|---|---|
| Date Opened: 06/30/2009 | Date Updated: 11/02/2021 | Pay Status: Paid, Closed; was Paid as agreed |
| Responsibility: Individual Account | Payment Received: $0 | Terms: $0 per month, paid Monthly for 300 months |
| Account Type: Installment Account | Last Payment Made: 11/02/2021 | |
| Loan Type: STUDENT LOAN | | Date Closed: 11/02/2021 |
| | | >Maximum Delinquency of 120 days in 12/2018 and in 02/2020< |

~~40.~~67. In early 2023, Plaintiff made an application for forgiveness of her loans from Defendant through the Public Service Loan Forgiveness ("PSLF") program.

~~41.~~68. At that time, the outstanding principal balance on Plaintiff's loans from Defendant was approximately $68,500.

~~42.~~69. Defendant, at its sole discretion, routinely transfers the servicing of federal student loans like Plaintiff's from one servicer to another.

~~43.~~70. Defendant transferred Plaintiff's loan servicing from Nelnet to the Missouri Higher Education Loan Authority ("MOHELA").

~~44.~~71. Nelnet confirmed this in correspondence dated May 25, 2023, when it notified Plaintiff of the following:

> The U.S. Department of Education (ED) will soon transfer the customer service of your federal student loan account to MOHELA, another member of ED's federal loan servicer team. Your loans are not being sold. ED will continue to own your loans; however, a different servicer will manage your loans and assist you on ED's behalf.

> ED is transferring your loan account to MOHELA because you requested to participate in the Public Service Loan Forgiveness (PSLF) Program. MOHELA is ED's servicer that provides customer service for

all federal student loan borrowers who are potentially eligible for PSLF and tracks their progress toward qualifying for PSLF. This change in servicer will not impact the existing terms, conditions, interest rate, or available repayment plans of your federal student loans.

Your loan account will be transferred to MOHELA on or about June 8, 2023. If ED doesn't transfer your account as planned, we'll let you know.

45. 72. After Defendant transferred the servicing of Plaintiff's student loan account from Nelnet to MOHELA, Plaintiff's Department of Education/Nelnet account was closed and MOHELA opened a new Department of Education account for Plaintiff with a new loan number.

46. 73. Accordingly, Defendant, directly and/or indirectly through its agents, should have reported to the CRAs that the balances of Plaintiff's transferred student loan account at Nelnet was $0.

47. 74. Instead, Defendant, directly and/or indirectly through its agents, continued to report or caused to be reported to the CRAs that the balance of Plaintiff's student loan account at Nelnet was $68,505.

48. 75. In January of 2024, Plaintiff reviewed her credit reports and discovered that Defendant, as DEPARTMENT OF EDUCATION/NELNET (or similar) was still directly and/or indirectly reporting that she had an open student loan account with a balance of approximately $68,505.

49. 76. Simultaneously, Defendant, as "MOHELA/DEPT OF ED" (or similar) was directly and/or indirectly reporting that Plaintiff had an *additional* federal student loan account due to Defendant with a total balance of approximately $68,548.

50. 77. That is, notwithstanding having itself transferred Plaintiff's single loan account with a balance of $68,505 from Nelnet to MOHELA, Defendant

15

~~furnished~~directly and/or ~~caused to be~~indirectly through its agents furnished information to the CRAs, including Experian, Equifax, and TransUnion, that Plaintiff owed it more than $137,000 in total.

~~51.~~78. This was false. Plaintiff no longer had any open student loan accounts with Defendant through Nelnet and did not owe it any amount for a student loan payable via Nelnet.

~~52.~~79. Indeed, in correspondence after the transfer to MOHELA, Nelnet stated that the balance of Plaintiff's student loans was $0.

~~53.~~80. As Defendant had transferred Plaintiff's loan account to MOHELA, it should only have reported to the CRAs that Plaintiff owed money to it pursuant to a single account, not two separate accounts with two separate servicers.

~~54.~~81. Plaintiff disputed Defendant's false, duplicative balance reporting through the CRAs, including Experian, Equifax, and TransUnion throughout 2023 and 2024.

~~55.~~82. Pursuant to the CRAs' independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), the CRAs provided notice of Plaintiff's disputes to Defendant directly and/or indirectly through its ~~servicing~~ agents.

~~56.~~83. Nevertheless, in its responses to Plaintiff's disputes through the CRAs, Defendant, directly and/or indirectly through its agents, repeatedly failed to correct or reduce the duplicative balance to $0 and to fulfill its other obligations under FCRA section 1681s-2(b). Instead, it continued to verify, directly and/or indirectly through

its agents. that Plaintiff owed it more than $137,000 in federal student loans,

including approximately $68,505 through Nelnet.

57.84. Plaintiff also sent complaints about Defendant's duplicative credit

reporting to the Better Business Bureau and the Federal Student Aid Ombudsman

Group in January of 2024 to which Nelnet responded on Defendant's behalf.

58.85. In correspondence dated January 25, 2024 in which it referred to

Defendant as "ED," Nelnet responded as follows:

> On behalf of ED, we must furnish your account data to the CRAs. Under
> the Fair Credit Reporting Act, we have an obligation to ensure the data
> we furnish is accurate and complete. Because the account has
> transferred to another ED servicer, a suppression has been added to the
> account, at the direction of ED. Nelnet has not actively furnished any
> data to the CRAs since May 31, 2023. Once we receive direction from ED
> to remove the suppression, we will furnish data reflecting that your
> account has a $0.00 balance and was transferred to another entity.
> (emphasis added).

59.86. Nelnet repeated the "suppression" explanation in subsequent

communications with Plaintiff dated January 26, 2024, January 30, 2024, and

February 1, 2024.

60.87. Plaintiff repeatedly requested an explanation of the "suppression"

Defendant added to her account, but Nelnet never provided it.

61.    Plaintiff also contacted MOHELA, hoping for a resolution of Defendant's

duplicative credit reporting. In correspondence dated February 5, 2024, MOHELA

responded as follows:

> Our records indicate, an update from your prior servicer to the Credit
> Reporting Agencies (CRAs) is necessary. Please contact Nelnet and
> request a credit review in order to initiate or expedite their update to
> the CRAs. Nelnet's customer service phone number is 888-486-4722.
> Once the update is submitted, MOHELA will then be able to update your

~~reporting with the CRAs properly on our end. We understand your~~
~~frustration in this matter and we thank you for your patience.~~

88.   At all relevant times, Defendant acted directly and/or indirectly through
its duly authorized agents, and/or employees with respect to the above-alleged
conduct.

89.   At all relevant times, Defendant willfully or negligently violated the
requirements of FCRA section 1681s-2(b).

*Defendant's Conduct Causes Substantial Harm*

~~62.~~90. As a result of Defendant's conduct, Plaintiff and members of the Class
appeared on their credit reports to owe to Defendant far more in federal student loans
than they actually did (usually double the amount actually owed), and thus suffered
injury and damages in the form of lost credit opportunities, harm to credit reputation
and credit score, and waste of time and resources.

91.   ~~At all relevant times, Defendant acted~~By failing to accurately report
Plaintiff and Class Members' transferred student loan accounts as having $0
balances, Defendant directly and/or indirectly through its agents misrepresented
Plaintiff and Class Members' total amount of indebtedness to one or more CRAs.

92.   Defendant's direct and/or indirect misrepresentations have harmful,
real-world consequences. According to the website of Experian, one of the three
largest CRAs, the "total amount you've borrowed affects your credit score;"
"[a]mounts owed are responsible for about 30% of your FICO® Score,"[3] and a

---

[3]   EXPERIAN INFORMATION SOLUTIONS, INC., *What Affects Your Credit Scores?*, July 23, 2023,
*available at* https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-affects-
your-credit-scores/ (last viewed Sep. 20, 2024).

18

consumer's "total credit usage" is "highly influential" in the calculation of the consumer's VantageScore, a credit scoring model created by Experian, TransUnion, and Equifax.[4]

93.     Having a good credit score is extremely important because it "could be the difference between qualifying or being denied for an important loan, such as a home mortgage or car loan. And, it can directly impact how much you'll have to pay in interest or fees if you're approved."[5]

94.     Upon information and belief, Defendant's inaccurate Student Loan Information, which misstates Plaintiff and Class Members' total debt burdens, caused a diminution of Plaintiff and Class Members' credit scores, harming their ability to obtain credit.

95.     Upon information and belief, Defendant's inaccurate Student Loan Information caused Plaintiff's credit score to decrease.

96.     Upon information and belief, on several occasions, one or more CRAs published the inaccurate Student Loan Information Defendant had directly and/or indirectly caused to be furnished about Plaintiff and Class Members in consumer reports that it sold to their existing and prospective creditors.

97.     Upon information and belief, TransUnion published Defendant's inaccurate Student Loan Information about Plaintiff to her prospective creditors,

---

[4]     EXPERIAN INFORMATION SOLUTIONS, INC., *What Is a VantageScore?*, June 25, 2024, *available at* https://www.experian.com/blogs/ask-experian/what-is-a-vantagescore-credit-score/ (last viewed Sep. 20, 2024).

[5]     EXPERIAN INFORMATION SOLUTIONS, INC., *What Is a Good Credit Score?*, *available at* https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-is-a-good-credit-score/ (last viewed Sep. 20, 2024).

including to Rocket Mortgage LLC via Factual Data on November 30, 2023 and several times in January 2024.

98.    Consumers about whom Defendant directly and/or indirectly caused inaccurate Student Loan Information to be furnished are further injured by its misrepresentations when CRAs sell consumer reports about them to their existing creditors and/or service providers (so-called "soft" inquiries), which can result in the additional financial harm of higher interest rates or insurance premiums, or reduced credit limits.

99.    Upon information and belief, TransUnion published Defendant's inaccurate Student Loan Information about Plaintiff to several other entities, including her existing creditors such as Apple Card GS Bank several times between October 2023 and February 2024.

100.    Further, in addition to or in the alternative to the foregoing harm, the inaccurate Student Loan Information Defendant caused to be furnished about Plaintiff and Class Members cast them in a false light and interfered with their ability to control their personal information.

101.    This sort of injury has long been understood to be an invasion of the common-law right to privacy. *Long v. Se. Penn. Trans. Auth.*, 903 F.3d 312, 324 (3d Cir. 2018).

102.    Defendant's false light portrayal of Plaintiff and Class Members caused them to be distraught, dismayed, and distressed.

20

103.    Plaintiff and Class Members manifested their negative emotional responses to Defendant's direct and/or indirect reporting of inaccurate Student Loan Information by disputing it with one or more CRAs.

104.    Plaintiff was sufficiently upset by Defendant's false light portrayal of her as being burdened by tens of thousands of dollars of student loan indebtedness that she did not owe that she disputed the Student Loan Information responsible for that portrayal to one or more CRAs in early 2024.

105.    Further, in addition to or in the alternative to the foregoing harms, Defendant's failure as a matter of policy and/or practice to correct the inaccurate Student Loan Information it had previously furnished about Plaintiff and Class Members to one or more CRAs injured them by wasting the time and resources they invested in their disputes.

106.    Because disputing inaccurate credit information requires many steps, each of which requires consumers to expend time and financial resources, it is not economically neutral.

107.    First, consumers must obtain a copy of their credit report and carefully review it to locate the inaccurate information. Second, they must prepare a letter identifying the information and explaining why it is inaccurate. Third, consumers must print their letters and any supporting documents, such as identification documents or correspondence from a third party, which consumes paper and printing resources. Finally, consumers must properly address their letters, place them in an

21

envelope, and pay for postage, often including additional fees for delivery confirmation and return receipts.

108.    Plaintiff spent time writing a dispute letter with several exhibits and spent money to send it to one or more CRAs by certified mail.

109.    When Defendant, as a matter of policy and/or regular practice, directly and/or indirectly through its agents fails to correct the inaccurate information that Plaintiff and Class Members have disputed, all the above-noted time and resources go to waste.

110.    Federal courts "have routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish [Article III] standing." *Healy v. Milliman*, Inc., No. C20-1473 (JCC), 2022 WL 1061921, at *3 (W.D. Wash. Apr. 8, 2022); *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("Because there is no question that wasted time is a concrete harm, [Plaintiff] has standing to pursue his claims."); *Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 372-73 (E.D. Pa. 2023) ("Because wasted time and expense are concrete harms, Plaintiffs sufficiently establish injury-in-fact on this theory[.]"); *Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701, 2022 WL 2841909, at *8 (E.D.N.Y. July 16, 2022) ("[Plaintiff's] wasted time and expense is a traditional monetary harm that is fairly traceable to [defendant's] policy . . . and is redressable by judicial relief."), *report and recommendation adopted as modified* 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024).

~~63.~~1.    through its duly authorized agents, and/or employees with respect to
the above-alleged conduct.

~~64.~~1.    At all relevant times, Defendant willfully or negligently violated the
requirements of FCRA section 1681s-2(b).

### V.    CLASS ALLEGATIONS

111.    Plaintiff seeks to represent the following Classes:

~~65.~~    **The Double Balance Problem Class:**

For the period beginning two years prior to the filing of the complaint in
this matter until the date of the Court's class certification Order,
individuals with an address in the United States and its Territories who
(1) had account(s) for federal student loan(s); (2) which account(s) were
transferred from one servicer to another servicer; and (3) after which
transfer, the individual disputed the reporting of the pre-transfer
account(s) through a CRA; but (4) in responding to the CRA's notice of
dispute, Defendant and/or its agents failed to report a $0 balance for the
pre-transfer account(s) or update the balance of the pre-transfer loan
account(s) to $0.

**The Suppression Problem Class**

For the period beginning two years prior to the filing of the complaint in
this matter until the date of the Court's class certification Order,
individuals with an address in the United States and its Territories who
(1) had account(s) for federal student loan(s); (2) on which account(s)
Defendant placed a suppression after transferring the loan(s) from one
servicer to another servicer; and (3) during the period in which its
suppression was in effect, the borrower disputed the reporting of the pre-
transfer account(s) through a CRA; but (4) in responding to the CRA's
notice of dispute, Defendant and/or its agents failed to report a $0
balance for the pre-transfer account(s) or update the balance of the pre-
transfer loan account(s) to $0.

~~66.~~112.    Plaintiff reserves the right to amend the above definition based

upon developments in discovery or as otherwise appropriate and permitted.

67.113.    Members of the ~~Class~~Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that they minimally number in the hundreds.

68.114.    There are questions of law and fact common to the ~~Class~~Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Class members disputed inaccurate information that Defendant had furnished to a CRA about them; whether Defendant failed to correct the disputed information; whether Defendant failed to instruct the CRA to mark the disputed information as "disputed;" whether Defendant's conduct was negligent, willful, or reckless; and whether members of the ~~Class~~Classes are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

69.115.    Plaintiff's claims are typical of the claims of the ~~Class~~Classes, which all arise from the same operative facts and are based on the same legal theories.

70.116.    Plaintiff will fairly and adequately protect the interests of the ~~Class~~Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are experienced in handling FCRA and other consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

71.117.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the ~~Class~~Classes would

24

create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the ~~Class~~Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

~~72.~~118.    A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the ~~Class's~~Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE
**On Behalf of Plaintiff and Members of the ~~Class~~Classes**
**for Defendant's Violation of 15 U.S.C. § 1681s-2(b)**

~~73.~~119.    Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

~~74.~~120.    After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of inaccurate information that Defendant, directly and/or indirectly through its agents, had previously furnished to the CRA about them, Defendant, directly and/or indirectly through its agents, negligently or willfully failed to report a $0 balance, correct the inaccurate information, and fulfill all of its duties under FCRA section 1681s-2(b).

~~75.~~121.    Defendant is liable to Plaintiff and members of the ~~Class~~Classes for all relief available pursuant to FCRA sections 1681n and 1681o.

### VII.    JURY TRIAL DEMAND

~~76.~~122.        Plaintiff demands trial by jury on all issues so triable.

### VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant her and members of the ~~Class~~Classes the following relief:

A.    certifying the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent them;

B.    awarding actual damages pursuant to 15 U.S.C. § 1681n(a) & o(a);

C.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a);

D.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

F.    awarding such other and further relief as may be necessary, just, and proper.

Dated:    ~~June 7~~November 21, 2024        Respectfully submitted,

                                DANIELLE HENKEL, *individually, and*
                                *on behalf of all others similarly situated,*

                    By:    */s/Courtney L. Weiner*
                                Courtney L. Weiner (#992797)
                                LAW OFFICE OF COURTNEY WEINER PLLC
                                1629 K Street NW, Suite 300
                                Washington, DC 20006
                                T: (202) 827-9980
                                cw@courtneyweinerlaw.com

James A. Francis (admitted *pro hac vice* forthcoming)
John Soumilas (admitted *pro hac vice* forthcoming)
Jordan M. Sartell (admitted *pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

/s/ Courtney L. Weiner
Courtney L. Weiner