## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DANIELLE HENKEL**, *on behalf of herself and all others similarly situated*,

    *Plaintiff*,

       v.

**UNITED STATES DEPARTMENT OF EDUCATION**,

    *Defendant*.

Civil Action No. 1:24-cv-01676-ABJ

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS THE AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... iii

I.     Introduction & Background ........................................................................... 1

II.    Standard ......................................................................................................... 3

III.   Argument ....................................................................................................... 5

   A.    Defendant's Purported Standing Arguments Are an Indirect Attack on the Merits, Inappropriate for Resolution under Rule 12 and Before Any Discovery, And Are Also Meritless ..................................................... 5

     1.   Defendant's Fact-Based Standing Arguments Are Premature ..................... 6

     2.   Defendant's Standing Arguments Lack Merit .............................................. 8

       a.   Plaintiff's Allegations Are Sufficient To Demonstrate Publication Of Inaccurate Information Giving Rise To Standing ....................................... 9

         i.   Plaintiff's Complaint Properly Pleads Publication ................................ 9

         ii.  DOE's Reporting To The CRAs Is A Separate Basis To Find A Concrete Reputational Injury ............................................................. 11

       b.   Wasted Time Is Also A Well Recognized Concrete Injury ........................ 13

       c.   Pleading Of Specific Terms Of Economic Damages Is Not Necessary ..... 15

       d.   Defendant's Traceability Arguments Fail ................................................. 17

       e.   Emotional Distress Is Also A Cognizable Article III Injury ..................... 19

   B.    Henkel May Recover Actual Damages Under The FCRA ............................ 19

   C.    DOE Is Subject to Liability Under the FCRA .............................................. 24

     1.   Defendant Is a Furnisher in Its Own Capacity ........................................... 24

     2.   Defendant Is a Furnisher as Principal for Nelnet ....................................... 26

       a.   Nothing in the FCRA Precludes Vicarious Furnisher Liability:  Sections 1681b and 1681d Provide No Guidance to Interpret Section 1681s-2(b) . 26

       b.   Congress Has Not Expressly Abrogated Common Law ............................ 28

       c.   Prohibiting Vicarious Liability Would Create an Absurd Result ............. 28

       d.   Courts Have Found Vicariously Furnisher Liability to Be a Factual Issue ......................................................................................................... 29

       e.   Plaintiff Has Adequately Pled Defendant's Control over Nelnet ............. 30

IV.    Conclusion.................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alston v. LexisNexis Risk Sols. Inc.,*
　No. 21-2322 (RBW), 2022 U.S. Dist. LEXIS 227178 (D.D.C. Dec. 16,
　2022) .................................................................................................................. 25

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ........................................................................................... 4

*Bach v. First Union Nat'l Bank,*
　149 Fed. App'x 354 (6th Cir. 2005) ................................................................ 22

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ........................................................................................... 4

*Bennett v. Spear,*
　520 U.S. 154 (1997) ......................................................................................... 18

*Betz v Jefferson Capital Systems, LLC,*
　68 F. Supp. 3d 130 (D.C. Cir. 2014) ............................................................... 18

*Bryant v. TRW Inc.,*
　689 F.2d 72 (6th Cir. 1982) ............................................................................ 21

*Cal. Ass'n of Physically Handicapped, Inc. v. FCC,*
　778 F.2d 825 (D.C. Cir. 1985) ........................................................................ 18

*Cannon v. Watermark Ret. Cmtys., Inc.,*
　458 U.S. App. D.C. 378, 45 F.4th 137 (2022) ................................................. 29

*Carney v. Adams,*
　141 S. Ct. 493 (2020) ......................................................................................... 4

*Chiang v. Verizon New Eng., Inc.,*
　595 F.3d 26 (1st Cir. 2010) ............................................................................. 25

*Clapper v. Amnesty Int'l. USA,*
　568 U.S. 398 (2013) ......................................................................................... 14

*Cortez v. Trans Union, LLC,*
　617 F.3d 688 (3d Cir. 2010) ........................................................................... 22

*Dalton v. Capital Associated Indus., Inc.*,
   257 F.3d 409 (4th Cir. 2001) ............................................................... 22

*Davis v. Mich. Dep't of Treasury*,
   489 U.S. 803, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ...................................... 26

*Dep't of Ag. Rural Dev. Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 (2024) ......................................................... 20, 21, 31

*Desmarattes v. Equifax*,
   2023 WL 8473362 (E.D.N.Y. Dec. 7, 2023) ........................................... 16

*Doe 1 v. Apple Inc.*,
   96 F.4th 403 (D.C. Cir. 2024) ............................................................... 17

*Ellis v. Pa. Higher Educ. Assistance Agency*,
   No. CV 07-04498 DDP, 2008 U.S. Dist. LEXIS 129710 (C.D. Cal.
   Aug. 12, 2008) ............................................................... 30

*Ewing v. MED-1 Sols., LLC*,
   24 F. 4th 1146 (7th Cir. 2022) ........................................................ 12, 13

*Fed. Aviation Admin. v. Cooper*,
   566 U.S. 284 (2012) ............................................................... 20, 21

*Feldmann v. Lakeview Loan Servicing L.L.C.*,
   2021 WL 1627048 (W.D. Wash. Apr. 27, 2021) .................................... 30

*Figueroa v. Capital One, N.A.*,
   2024 WL 209058 (D.N.J. Jan. 19, 2024) ............................................... 13

*Fischl v. Gen. Motors Acceptance Corp.*,
   708 F.2d 143 (5th Cir. 1983) ............................................................... 22

*Frank v. Autovest, LLC*,
   961 F.3d 1185 (D.C. Cir. 2020) ............................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),
Inc.*,
   528 U.S. 167 (2000) ............................................................... 4

*Gerena v Freedom Mortg. Corp.*,
   2024 WL 1023033 ............................................................... 9, 11

*Graumann v. Equifax Info. Servs., LLC*,
   549 F. Supp. 3d 285 (E.D.N.Y. 2021) .................................................... 16

iv

*Gross v. CitiMortgage, Inc.*,
  33 F.4th 1246 (9th Cir. 2022) ................................................................. 9

*Guimond v. Trans Union Credit Info. Co.*,
  45 F.3d 1329 (9th Cir. 1995) ................................................................. 21

*Haddad v. Charles Riley & Assocs.*,
  No. 09-12597, 2010 U.S. Dist. LEXIS 103623 (E.D. Mich. Apr. 12,
  2010) ......................................................................................................... 30

*Healy v. Milliman, Inc.*,
  2022 WL 1061921 (W.D. Wash. Apr. 8, 2022) ...................................... 13

*Henderson v. Source for Public Data, L.P.*,
  53 F.4th 110 (4th Cir. 2022) ................................................................. 11

*Hines v. Equifax Info. Servs.*,
  LLC, No. 19-CV-6701, 2022 WL 2841909 (E.D.N.Y. July 16, 2022) ........ 14

*Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp.*,
  758 F.3d 378 (2014) ............................................................................... 31

*Jarrett v. Experian Info. Sols., Inc.*,
  No. 3:20-cv-125 (DJN), 2021 WL 1381132 (E.D. Va. Apr. 12, 2021) ........ 8

*Jeong Seon Han v. Lynch*,
  223 F. Supp. 3d 95 (D.D.C. 2016) ........................................................... 4

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ........................................................ 10, 15

*Kern v. United States*,
  585 F.3d 187 (4th Cir. 2009) ................................................................... 6

*Kunzte v. Josh Enterprises, Inc.*,
  365 F. Supp. 3d 630 (E.D. Va. 2019) ....................................................... 6

*Lamando v. Rocket Mortgage*,
  2024 WL 264034 (N.D.N.Y. Jan 24, 2024) ........................................... 10

*Lancaster Symphony Orchestra v. NLRB*,
  822 F.3d 563 (2016) ............................................................................... 31

*Lo Shippers Action Comm. v. Interstate Com. Comm'n*,
  808 F.2d 64 (D.C. Cir. 1986) ................................................................. 18

*Losch v. Nationstar Mortg. LLC,*
    995 F.3d 937 (11th Cir. 2021) ........................................................................ 14, 22

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .................................................................................... 4

*Magruder v. Capital One, Nat'l Ass'n,*
    540 F. Supp. 3d 1 (D.D.C. 2021) ................................................................ 15, 19

*Metcalf v. Nat'l Petrol. Council,*
    553 F.2d 176 (D.C. Cir. 1977) ............................................................... 16

*Miller v. Dish Network, L.L.C.,*
    326 F. Supp. 3d 51 (E.D. Va. 2018) ........................................................... 19

*Morgan v. LVNV Funding, LLC,*
    2023 WL 5808365 (E.D. Mich. Sept. 7, 2023) ....................................... 13

*Morris v. Credit Bureau of Cincinnati, Inc.,*
    563 F. Supp. 962 (S.D. Ohio 1983) ........................................................... 22

*Murray v. GMAC Mortg. Corp.,*
    434 F.3d 948 (7th Cir. 2006) ................................................................ 24

*Norman v. Trans Union, LLC,*
    669 F. Supp. 3d 351 (E.D. Pa. 2023) ........................................................ 14, 22

*Pedro v. Equifax, Inc.,*
    868 F.3d 1275 (11th Cir. 2017) ............................................................ 13

*Pharms v. Nat'l Credit Sys., Inc.,*
    2022 WL 2346623 (S.D. Ga. June 29, 2022) ........................................... 13

*Philbin v. TransUnion Corp.,*
    101 F.3d 957 (3d Cir 1996) ...................................................................... 18

*Pietrangelo v. Refresh Club, Inc.,*
    2019 WL 2357379 (D.D.C. June 4, 2019) ............................................... 6

*Public Citizen v. FTC,*
    869 F.2d 1541,1549 (D.C. Cir. 1989) ...................................................... 6

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) .................... 29

*Sharma v. District of Columbia,*
    791 F. Supp. 2d 207 (D.D.C. 2011) ......................................................... 29

*Sipe v. Equifax Info. Servs., LLC,*
  No. CV 3:16- 6103, 2017 WL 253157 (S.D.W. Va. Jan. 20, 2017) ........................ 8

*Spira v. Trans Union LLC,*
  2022 WL 2819469 (S.D.N.Y. July 19, 2022) ....................................................... 16

*Stevenson v. TRW Inc.,*
  987 F.2d 288 (5th Cir. 1993) ............................................................................... 22

*Summit Investments II v. Sam's East, Inc.,*
  2024 WL 1223541 (E.D. Va. Mar. 21, 2024) ........................................................ 7

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ............................................................... 8, 9, 12, 13

*United States v. Saffarinia,*
  101 F.4th 933 (D.C. Cir. 2024) ............................................................................ 26

*United States v. Students Challenging Regul. Agency Procs. (SCRAP),*
  412 U.S. 669 (1973) .............................................................................................. 7

*United States v. Texas,*
  507 U.S. 529, 113 S. Ct. 1631 (1993) .................................................................. 28

*Wilson v. Carrington Mortg., S.E.,*
  No. 2:22-cv-03595-BHH-MHC, 2023 WL 7536168 (D.S.C. Oct. 23,
  2023) ........................................................................................................................ 8

*Wilson v. CoreLogic Saferent, LLC,*
  No. 14-CV-2477 (JPO), 2017 U.S. Dist. LEXIS 162928, 2017 WL
  4357568 (S.D.N.Y. Sept. 29, 2017) ..................................................................... 29

*Woodward v. GEICO Advantage Ins. Co.,*
  No. CV GLR-21-952, 2022 WL 2953053 (D. Md. July 25, 2022) ....................... 9, 19

**Statutes**

15 U.S.C. § 1681 ........................................................................................*passim*

20 U.S.C. §§ 1080a ...................................................................................... 25,32

**Rules and Regulations**

12 C.F.R. § 1022.41(c) ....................................................................................... 24

16 C.F.R. § 660.2(c) .......................................................................................... 24

FED. R. CIV. P. 12(b) .................................................................................. 1, 4, 5,6

**Other Authorities**

Danielle Douglas-Gabriel, *How a Paperwork Glitch Is Hurting Student Loan Borrowers' Credit Scores,* THE WASHINGTON POST, May 29, 2024, *available at* https://www.washingtonpost.com/education/2024/ 05/29/student-loan-balance-duplicates-credit-reports/ ........................................... 2

Elizabeth Gravier, CNBC, "Can employers see your credit score?" (Oct. 21, 2024), *available at* https://www.cnbc.com/select/can-employers-see-your-credit-score/ (Oct. 21, 2024), *available at* https://www.cnbc.com/select/can-employers-see-your-credit-score/ .................... 27

*Federal Student Aid*, *available at* https://studentaid.gov/understand-aid/types/loans/subsidized-unsubsidized (viewed March 5, 2025) ......................... 1

Restatement 2d of Agency, § 2(3) .................................................................. 1

Restatement 2d of Agency, § 14 Cmt. a ........................................................ 31

Restatement 2d of Agency, § 220 .................................................................. 31

Plaintiff Danielle Henkel opposes Defendant United States Department of Education's ("DOE's" or "government's") Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6) ("Motion"). ECF 23. For the following reasons, this Court should deny the Motion.

## I.  INTRODUCTION & BACKGROUND

The DOE has for years been a one-stop shop when it comes to financing higher education in America. According to its own website, the DOE las long offered certain college loans, loan repayment programs, and loan forgiveness programs. *See* U.S. DEPARTMENT OF EDUCATION, *Subsidized and Unsubsidized Loans | Federal Student Aid*, *available at* https://studentaid.gov/understand-aid/types/loans/subsidized-unsubsidized (viewed March 5, 2025). *See also* ECF 20, Amended Complaint, at ¶¶ 37-62.

Relevant to this case, the DOE also oversees and controls all aspects of the credit reporting of its student loans. *Id.* at ¶ 37. Through private businesses that it hires and calls "servicers," the DOE imposes strict requirements for how student loans are to be reported to the national credit reporting agencies (or "CRAs"), Equifax, Experian, and Trans Union. *Id.* at ¶¶ 40-60. It also has precise rules for its servicers relating to consumer disputes of credit reporting. *Id.* at ¶¶ 61-62.

Importantly, Defendant defines itself in these servicing contracts to include its servicers. *Id.* at ¶ 38. In other words, Defendant considers itself and its servicers to be one and the same. *Id.* Indeed, on Plaintiff's credit reports, her student loans are listed as being reported by *both* the Department of Education and its servicers.  *Id.* ¶¶ 65-66.  And the "DEPT OF ED" is specifically listed in the area where "creditors"

1

or "furnisher" are usually listed on credit reports. *Id.*

Further, the DOE decides when student loan servicing may be transferred, in order to qualify for certain DOE repayment or forgiveness programs for example, and how both the transferee and transferor servicer must credit report those loans thereafter. *Id.* at ¶¶ 62, 44-49, 56-60. Even when Defendant transfers a student loan from one servicer to another and no balance is owing to the first servicer, *id.* at ¶¶ 69-80, Defendant directs certain credit "suppression" codes that prohibit the transferor servicers from reporting $0 balances to credit reporting agencies. *See id.* at 85-87. The servicers are not free to use their own judgment or discretion about how to credit-report student loans and have no discretion to remove "suppressions" or to change false credit reporting—even after a dispute from the borrower. *Id.*

Even when borrowers such as Plaintiff complain and dispute repeatedly, the "suppression" cannot be "remove[d]" until the DOE so directs. *Id.* ¶ 85. Plaintiff disputed this inaccurate credit reporting repeatedly (reflecting negatively on her credit reports that she allegedly owed double the student loan debt that she actually owed) and was advised that only "[o]nce we receive direction from [the DOE] to remove the suppression, we will furnish data reflecting that your account has a $0.00 balance" with the original servicer. *Id.*

The end result is predictable and widely known. *Id.* ¶ 15. *See also* Danielle Douglas-Gabriel, *How a Paperwork Glitch Is Hurting Student Loan Borrowers' Credit Scores,* The Washington Post, May 29, 2024, *available at* https://www. washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-

reports/ ("A problem with the transfer of student loan accounts is creating duplicate balances on credit reports, an error that can lower credit scores for millions of borrowers").

Student loan borrowers including Plaintiff have their credit reports and credit scores ruined because they appear to owe twice the amount of student loan debt they actually owe. *Id.* ¶¶ 90-94, 95-99. They also waste their time and resources trying to correct the false credit reporting in vain, only to be frustrated and upset by the futile dispute process, *id.* at ¶¶ 105-10, and are also falsely portrayed or even defamed in the credit markets during this Kafkaesque process. *Id.* at ¶¶ 100-04.

Now the DOE moves to dismiss Plaintiff's Amended Complaint. ECF 23.[1] It first contends that Plaintiff suffered no harm at all that would give her standing to sue in federal court, and even if she was harmed by Defendant's actions, she cannot recover what's termed "actual damages" under the federal Fair Credit Reporting Act ("FCRA"). *Id.* at pp. 7-21, Then Defendant argues that even if Plaintiff has been harmed and/or sustained actual damages as a result of Defendant's conduct, she fails to state a claim allegedly because she cannot sue the DOE under the FCRA as a credit furnisher. *Id.* at pp. 21-31. Because these arguments lack merit, as discussed below, the DOE's motion must be denied.

## II.    <u>STANDARD</u>

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's

---

[1]    Plaintiff brings this claim on behalf of two nationwide classes of similarly situated borrowers who also disputed Defendant's inaccurate balance reporting after Defendant transferred their federal student loan accounts from one of Defendant's student loan servicers to another. *See* ECF 20 at ¶ 111. The claims of the classes are not yet before this Court.

factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted).

Although a motion under Rule 12(b)(1) may challenge Article III standing, it is important to note that the Supreme Court has long held that standing is assessed "at the time the action commences," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000), and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden to demonstrate standing evolves in accordance "with the manner and degree of evidence required at the successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at 561. At the pleading stage, therefore, "general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Defs. of Wildlife*, 504 U.S. at 561 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)); *see also Carney v. Adams*, 141 S. Ct. 493, 499 (2020).

The well-known standard under Rule 12(b)(6) requires the trial court to determine whether a complaint plausibly alleges a cause of action. The plausibility standard requires a context-and fact-specific assessment of the pleadings: whether the factual allegations conceivably support a claim for relief; or, put another way, whether the pleading plausibly states a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Twombly*, 550 U.S. at 556).

# III.    ARGUMENT

### A. Defendant's Purported Standing Arguments Are an Indirect Attack on the Merits, Inappropriate for Resolution under Rule 12 and Before Any Discovery, And Are Also Meritless

Although framed as a challenge to this Court's Article III subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Motion is in reality an indirect attack on the merits of Plaintiff's claims, because many of the same facts relevant to Plaintiff's Article III standing are relevant to the merits. Indeed, Defendant's primary arguments assert that Plaintiff cannot establish damages, which it improperly conflates with "harm" for Article III purposes, and that she cannot establish proximate causation between its conduct and the recognized damages that she seeks to recover in this action.

Defendant's standing argument should also be rejected because they ignore the wealth of case law, including from the U.S. Supreme Court, demonstrating that Defendant's repeated inaccurate credit reporting of duplicative balances, and time and resources wasted by consumer such as Plaintiff on futile disputes, is sufficient to find Article III standing and to thus confer subject matter jurisdiction on this Court.

Defendant confuses economic damages (which is just one form of FCRA actual damages) with what's required for concrete harm for purposes of Article III sanding. Further, the facts surrounding Plaintiff's asserted damages are the subject of numerous factual disputes, making disposition as a matter of law inappropriate as well as premature. As set forth herein, Plaintiff establishes that she satisfies the requirements of Article III to show that she suffered concrete and particularized harm (or injuries) that are fairly traceable to Defendant's conduct and redressable by

a judgment in her favor, thereby properly involving this Court's subject matter jurisdiction.

Whether Plaintiff untimely wins her case on the merits, and whether she recovers statutory damages of $100-$1,000 or actual damages under the FCRA is beside the point. She has property pled subject matter jurisdiction for her case to proceed in federal court.

## 1. Defendant's Fact-Based Standing Arguments Are Premature

It is well-established that courts must avoid resolving issues contested on the merits under the banner of standing. *Public Citizen v. FTC*, 869 F.2d 1541,1549 (D.C. Cir. 1989) (cautioning that parties may not "bootstrap standing analysis to issues that are controverted on the merits"). *Kern v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery[.]"). "That is particularly true where, as here, the plaintiff has not yet had the benefit of discovery, and the factual record remains incomplete." *Pietrangelo v. Refresh Club, Inc.*, 2019 WL 2357379, at *4 (D.D.C. June 4, 2019) (citing *Kern*). *See Kunzte v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 644-49 (E.D. Va. 2019) (denying 12(b)(1) attack on standing in favor of discovery where jurisdictional and merits issue overlapped).

The arguments presented in Defendant's Motion are not appropriate for resolution under Rule 12 and at this early stage because they involve factual matters central to both Article III standing and the merits of Plaintiff's FCRA claim: how was

Plaintiff impacted by Defendant's inaccurate reporting of duplicative student loan balances, and were those impacts caused by Defendant? While Article III injury and causation involve distinct legal standards from what constitutes FCRA actual damages and causation as detailed below, they involve much the same *factual* issues, which have not been developed to date. Substantial discovery bearing on Defendant's communications concerning Plaintiff's student loans and the impacts flowing therefrom is needed to resolve the issues of harm and causation, including third-party discovery to Equifax, Experian, Trans Union and other third parties.

Defendant itself confuses the merits of this case with Article III standing, insisting that Plaintiff must demonstrate some form of *economic damages* in order to satisfy the applicable standard for Article III *harm*. But the question of compensable FCRA *actual damages* is a separate analysis from the question of whether a plaintiff was were *harmed*, even intangibly, in such a way to have a stake in the litigation. *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14, (1973) (injury-in-fact requirement is intended to "distinguish a person with a direct stake in the outcome of a litigation – even though small – from a person with a mere interest in the problem.").

Defendant's confusion of the applicable standards only serves to emphasize that its Motion is aimed at the merits in this case. *See Summit Investments II v. Sam's East, Inc.*, 2024 WL 1223541, at *7 (E.D. Va. Mar. 21, 2024) (denying 12(b)(1) factual attack on Article III standing because argument regarding damages went to merits issue of "scope/extent of damages" rather than standing question). This Court should

therefore decline to resolve these overlapping merits and jurisdictional questions without further discovery.

### 2. Defendant's Standing Arguments Lack Merit

Even if they were properly presented at this stage of the case, which they are not, Defendant's arguments that this Court allegedly lacks Article III standing are without merit.

At this early stage, all Plaintiff must do is plead general factual allegations of injury showing "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)); *Frank v. Autovest, LLC*, 961 F.3d 1185, 1187 (D.C. Cir. 2020) ("general factual allegations of injury resulting from the defendant's conduct" can be sufficient at the pleading stage) (quoting *Lujan*).

Courts have repeatedly found that the sorts of injuries – tangible and intangible – alleged by Plaintiff here are sufficient to confer Article III standing in the context of a claim brought pursuant to FCRA section 1681s-2(b). *Sipe v. Equifax Info. Servs., LLC*, No. CV 3:16- 6103, 2017 WL 253157, at *6 (S.D.W. Va. Jan. 20, 2017); *Wilson v. Carrington Mortg., S.E.*, No. 2:22-cv-03595-BHH-MHC, 2023 WL 7536168, at *5 (D.S.C. Oct. 23, 2023), *report and recommendation adopted*, 2023 WL 7534932 (D.S.C. Nov. 13, 2023); *Jarrett v. Experian Info. Sols., Inc.*, No. 3:20-cv-125 (DJN), 2021 WL 1381132, at *5 (E.D. Va. Apr. 12, 2021) (standing in s-2(b) case);

*Woodward v. GEICO Advantage Ins. Co.*, No. CV GLR-21-952, 2022 WL 2953053, at *5 (D. Md. July 25, 2022) (same)*; Gerena v Freedom Mortg. Corp.*, 2024 WL 1023033, at *6-10 (same); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253, n.2 (9th Cir. 2022) (rejecting furnisher's argument that consumer had not alleged concrete harm in analogous FCRA section 1681s-2(b) matter, such as the one at bar).

Defendant's lengthy standing argument relies instead on inapt or irrelevant case law, and mischaracterizes Plaintiff detailed pleading regarding harm, including her allegations that DOE's inaccurate reporting was repeatedly disseminated to third parties after DOE failed to resolve her disputes.

### a. Plaintiff's Allegations Are Sufficient To Demonstrate Publication Of Inaccurate Information Giving Rise To Standing

Defendant's assertions regarding standing fundamentally fail because they ignore Plaintiff's detailed allegations establishing that Defendant's failure to comply with its obligations under FCRA section 1681s-2(b) led to *dissemination of inaccurate credit information* concerning Plaintiff's student loans to third parties.  Under the binding precedent of *TransUnion*, as shown by the wealth of case law applying it in this context in recent years, this type of injury is "closely related" to defamation and is this sufficient to give rise to standing.

#### i.    *Plaintiff's Complaint Properly Pleads Publication*

Plaintiff's allegations demonstrate that DOE reported duplicative and inaccurate information concerning Plaintiff's student loans for months after her she disputed and her disputes were unresolved.  ECF 20 at ¶¶ 81, 86, 97, 99.

Even Defendant's own cited cases on standing in this context have found that

where a complaint specifically identifies hard and soft inquiries on credit reports following a dispute, this is sufficient to demonstrate publication and confer standing at the pleading stage. *Lamando v. Rocket Mortgage*, 2024 WL 264034 (N.D.N.Y. Jan 24, 2024) (standing satisfied).

The government tries to negate Plaintiff's allegations of dissemination of credit inaccurate information to third parties because some of the allegation are pleaded upon information and belief – but this is precisely the situation where courts have recognized that such pleading is appropriate: where the necessary information to confirm such pleading is not in the plaintiff's possession. *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) ("We have recognized that pleadings on information and belief are permitted when the necessary information lies within defendants' control.") (internal quotations omitted).  Plaintiff's pleading provides sufficient facts making clear DOE is the cause of the duplicative reporting, and that it continued into 2024 despite Plaintiff's repeated disputes. ECF 20 at ¶¶ 72-83, 85.  This is more than enough to create a plausible inference that the negative double reporting appeared on Plaintiff's credit reports when they were disseminated by the credit reporting agencies to her creditors and potential creditors thereafter. *Id.* at ¶¶ 97, 99. Far from being conclusory,  Plaintiff's other allegations provide sufficient and detailed context making these allegations on information and belief entirely plausible and a proper basis for Article III standing.[2]

---

[2]    The same allegations support a finding of Article III injury because this inaccurate reporting portrayed Plaintiff in a false light, a traditionally recognized reputational injury. *See Gerena v. Freedom Mortg. Corp.*, 2024 WL 1023033, at *10 (E.D. Va. Mar. 8, 2024) (assessing Article III standing

Finally, Plaintiff's Amended Complaint identifies by name the third parties that regularly accessed Plaintiff's credit reports and thus have received the inaccurate duplicative loan information, businesses such as Rocket Mortgage, Factual Data and Apple Crad GS bank. *Id.* at ¶¶ 97, 99. These factual allegations are more than sufficient to demonstrate that Plaintiff's credit report is regularly disseminated to third party creditors and potential creditors, even after her FCRA section 1681s-2(b) disputes.

ii.    *DOE's Reporting To The CRAs Is A Separate Basis To Find A Concrete Reputational Injury*

Furthermore, Defendant's arguments entirely ignore the fact that DOE itself repeatedly published the inaccurate information to the Big Three CRAs Equifax, Experian, and Trans Union – themselves third parties for purposes of publication. These third party publications are in themselves sufficient for standing.

Case law on dissemination of inaccurate information often focuses on dissemination to potential creditors because the defendant at issue is a CRA, making the relevant third parties the creditors to whom CRAs sell credit reports. *See, e.g. Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022). But courts have recognized that in the context of a claim against a furnisher, the furnisher's dissemination of inaccurate information *to a CRA* is a publication causing a

---

in context of FCRA section 1618s-2(b) claim that creditor had inaccurately, but "positively" reported a balance the consumer did not owe and finding that plaintiff had alleged concrete and particularized injuries fairly traceable to defendants' conduct). Because Defendant's arguments regarding this false light injury are based upon the same mischaracterization of Plaintiff's pleading of dissemination, they fail for the same reasons discussed above.

defamatory injury giving rise to Article III standing. *Ewing v. MED-1 Sols., LLC*, 24 F. 4th 1146, 1153 (7th Cir. 2022).

Although it dealt with claims under the Fair Debt Collection Practices Act rather than the FCRA, the Seventh Circuit's decision in *Ewing v. MED-1 Sols., LLC* is instructive, as it addressed highly analogous conduct: third-party communications by a furnisher to a CRA following a consumer's dispute. 24 F. 4th at 1150. The defendant debt collectors in *Ewing* argued that to show a concrete harm under *TransUnion*, consumers were required to prove that the CRA separately sent a consumer report to a potential creditor containing the misleading information the debt collectors had supplied. *Id*. at 1152-53. The Seventh Circuit firmly rejected this re-publication argument, holding that the first publication by the debt collectors to the CRAs was sufficient to find publication and concrete harm. *Id*. at 1153-54.

Where a company furnishes inaccurate or misleading information to a CRA, including failing to mark an account as disputed, this qualifies as a third-party publication within the meaning of *TransUnion*, and consumers "do not have to make a further showing that the third party also shared that false information." *Id*. at 1153. The *Ewing* court furthermore cited evidence that the misleading information factored into consumer's credit scores was sufficient evidence to find that publication of the information was sufficiently analogous to defamation to find Article III standing satisfied. *Id*. at 1154.

Numerous courts have applied the reasoning of *Ewing* to find that the reporting of inaccurate information by a furnisher to a CRA constitutes the type of

12

defamatory publication contemplated by *TransUnion*, and is sufficient by itself to satisfy Article III's concrete injury requirement, without further re-publication by the CRA. *Figueroa v. Capital One, N.A.*, 2024 WL 209058, at *3 (D.N.J. Jan. 19, 2024) (adopting reasoning of *Ewing* and citing cases); *Morgan v. LVNV Funding, LLC*, 2023 WL 5808365, at *5 (E.D. Mich. Sept. 7, 2023) (citing to *Ewing's* publication holding favorably but finding that plaintiff lacked concrete injury on other grounds); *Pharms v. Nat'l Credit Sys., Inc.*, 2022 WL 2346623, at *7 (S.D. Ga. June 29, 2022) (finding a credit reporting agency to be a third-party for defamation purposes). *See also Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017) ("The reporting of inaccurate information about [the plaintiff's] credit to a credit monitoring service[ ] has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts.")

**b. Wasted Time Is Also A Well Recognized Concrete Injury**

Federal courts "have routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish [Article III] standing." *Healy v. Milliman, Inc.*, 2022 WL 1061921, at *3 (W.D. Wash. Apr. 8, 2022). Indeed, courts addressing FCRA claims stemming from consumer disputes have confirmed that the injury of wasted time (and related wasted resources in making a dispute) is economic in nature, and thus a distinct form of injury (and additional to defamation style injury) that confers standing in itself. *See Hines v. Equifax Info. Servs.*, LLC, No. 19-CV-6701, 2022 WL 2841909, at *8 (E.D.N.Y. July 16, 2022) ("[Plaintiff's] wasted time and expense is a traditional

monetary harm that is fairly traceable to [defendant's] policy . . . and is redressable by judicial relief."), report and recommendation adopted as modified 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024); *Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 372-73 (E.D. Pa. 2023) ("Because wasted time and expense are concrete harms, Plaintiffs sufficiently establish injury-in-fact on this theory*[.]"); see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("Because there is no question that wasted time is a concrete harm, [Plaintiff] has standing to pursue his claims.").

Rather than address these authorities, Defendant attempts to argue as if this is a case where the asserted harm is a risk of future harm, and Plaintiff expended time and effort to prevent such future harm that never materialized.  ECF 23-1 at p. 19 (citing *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013)).  But *Clapper* and Defendant's other cited cases deal with efforts to address speculative future harm, not efforts to invoke a defendant's statutory obligation to correct known and pre-existing inaccurate reporting and where the misreporting in fact occurred after Defendant's refusal to make corrections.  The harm of wasted time and expense in disputing is thus not "self-inflicted" at all as Defendant suggests. It was entirely inflicted on Plaintiff and other consumers through DOE's own steadfast refusal to reasonably investigate and correct its own inaccurate credit reporting.  After all, Plaintiff's time would not have been wasted if DOE had conducted the reasonable investigation required by the FCRA and started correctly reporting Plaintiff's student loan balances.

14

Moreover, Plaintiff disputed repeatedly here, not knowing her disputes were all doomed to fail since the "suppression" code would not be removed per DOE policy. ECF 20 at ¶¶ 72-83, 85. The wasted time and resources following her first unsuccessful dispute are surely a result of and stem directly from Defendant's failure to correct its false credit reporting in the first instance, as required by FCRA section 1681s-2(b)

### c. Pleading Of Specific Terms Of Economic Damages Is Not Necessary

Defendant suggests that in order to plead Article III injury in the form of reduced credit score and lost credit opportunities, Plaintiff must specifically plead "the pertinent loan terms" of particular credit applications, and whether she received credit on other terms. ECF 23-1 at p. 10. Defendant goes on to insist that Plaintiff must show that she was actually prevented from getting credit in order to show concrete injury. *Id.* at p. 18. While such detailed facts might be necessary in order to recover certain types of economic damages under the FCRA, that is a merits question inappropriate for the pleading stage.

Defendant's argument demands far more than is required at the pleading stage where Plaintiff's factual allegations must be accepted as true and all reasonable inferences from those facts must be drawn in her favor. *Kareem*, 986 F.3d at 865; *Magruder v. Capital One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 6-7 (D.D.C. 2021) ("At the pleading stage, therefore, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'") (quoting *Lujan*, 504 U.S. at 561).

Defendant's argument is based upon a lengthy string cite to cases bearing little

15

resemblance to Plaintiff's detailed plead, involving information that was never published to a third party (*Maddox v. Bank of N.Y. Mellon Tr. Co.*, N.A., 19 F.4th 58 (2d Cir. 2021)*, Spira v. Trans Union LLC*, 2022 WL 2819469, (S.D.N.Y. July 19, 2022) (no creditors identified)*, Graumann v. Equifax Info. Servs., LLC*, 549 F. Supp. 3d 285 (E.D.N.Y. 2021) (same)), efforts to invoke "citizen standing" to seek injunctive relief based upon conjectural future harm (*Metcalf v. Nat'l Petrol. Council*, 553 F.2d 176 (D.C. Cir. 1977), and multiple cases brought by *pro se* plaintiffs who neither identified creditors to whom inaccurate information was published nor any explanation regarding how such information could even possibly impact credit determinations. ECF 23-1 at pp. 10-11 (citing *Lewis v. Experian Info. Sols, Inc.*, 2024 WL 1308705, at *5-6 (E.D.N.Y. Mar. 27, 2024) ("difficult to interpret" complaint did not identify creditors); *Desmarattes v. Equifax*, 2023 WL 8473362 (E.D.N.Y. Dec. 7, 2023) (discussing standing in *dicta* after determining that *pro se* plaintiff did not adequately plead inaccurate reporting).  *See also id.* citing *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273–74 (E.D.N.Y. 2022) (no specific instances of publication identified, and holding that it is " simply not plausible to claim that listing PLS instead of PNMAC on his credit report actually caused plaintiff to lose a credit opportunity.").

As discussed above, Plaintiff's specifically alleges that DOE's inaccurate reporting of her student loan balances was published to multiple creditors and/or potential creditors after DOE ignored or failed to resolve her FCRA section 1681s-2(b) disputes.  ECF 20 at ¶¶ 72-87, 96-99,  Furthermore,  she provides a detailed explanation for precisely how this negative credit reporting impacted both her credit

score and creditors' assessment of her creditworthiness: by making it appear that she had double the amount of student debt, a criterion that is "highly influential" in the calculation of credit scores, accounting for approximately 30% of the FICO Score, and which reduces one's credit score. *Id.* at ¶¶ 90-93. This detailed pleading is sufficient to show Article III injury at this early stage, and Defendant's demand for more should be rejected prior to discovery. *See* section III.A.1, *supra.*

### d. Defendant's Traceability Arguments Fail

Defendant argues that the damaging impact to Plaintiff's reputation and creditworthiness caused by its inaccurate credit reporting is not "fairly traceable" to the alleged violation here, but this argument misrepresents both Plaintiff's claims and the Article III causation analysis.

Contrary to Defendant's suggestion that a showing of proximate causation is required, Article III traceability is satisfied at the pleading stage where there is a plausible inference of a "causal connection between the assertedly unlawful conduct and the alleged injury." *Doe 1 v. Apple Inc.*, 96 F.4th 403, 409 (D.C. Cir. 2024). "The traceability requirement guards against lawsuits that premised upon 'the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). There is no requirement that he challenged conduct be the sole or immediate cause of the injury. *Bennett v. Spear*, 520 U.S. 154, 169 (1997).[3]

---

[3] Under the FCRA, a consumer may recover damages upon a showing that a defendant's actions were a "substantial factor" (among other factors) in bringing about the consumer's harm. *Philbin v. TransUnion Corp.*, 101 F.3d 957, 968 (3d Cir 1996).

Here, the unlawful conduct asserted is Defendant's refusal to investigate and correct its reporting of Plaintiff's student loan balances as required by FCRA section 1681s-2(b).  The Article III analysis is therefore not about a "pre-existing" injury flowing from Defendant's original misreporting, but DOE's failure to comply with a duty that did not exist at all until Plaintiff's disputes. *Betz v Jefferson Capital Systems, LLC,* 68 F. Supp. 3d 130, 135 (D.C. Cir. 2014) (furnisher's reinvestigation duty triggered by receipt of notice of consumer dispute from CRA).  As noted above, Plaintiff's allegations demonstrate that Defendant published inaccurate information even after she put Defendant on notice of the inaccuracies through her FCRA section 1681s-2(b) disputes; each such publication was a new injury that would not exist if Defendant had complied with its FCRA obligations.  ECF 20 at ¶¶ 81, 86, 97, 99.

Defendant again cites to irrelevant and unhelpful cases in support of its misleading traceability argument.  *Lo Shippers Action Comm. v. Interstate Com. Comm'n*, 808 F.2d 64, 65 (D.C. Cir. 1986) (rejecting lawsuit as attempt "to secure judicial review of a nonreviewable" determination by defendant in response to harm caused by nonparty); *Cal. Ass'n of Physically Handicapped, Inc. v. FCC*, 778 F.2d 825 (D.C. Cir. 1985) (injuries caused by nonparty were not traceable to approval of license renewal because injury would have continued even if renewal was denied). This is not a case where Plaintiff seeks redress for failure to halt harms caused by another bad actor not before the court – Plaintiff's claim is explicitly that *Defendant* is the source of the inaccuracy and has an independent duty to correct it upon a dispute.

By stark contrast here, DOE itself is the bad actor tasked by the FCRA with

correcting its own harmful actions. To accept DOE's traceability argument is to find that there can *never* be standing for FCRA section 1681s-2(b) violations because any harms would be solely traceable to the initial inaccurate reporting. Courts have rejected this position as untenable and creating an absurd result. *Woodward v. GEICO Advantage Ins. Co.*, 2022 WL 2953053, at *5 (D. Md. July 25, 2022). This Court should do the same.

### e. Emotional Distress Is Also A Cognizable Article III Injury

Finally, Defendant caps off its litany of unsuccessful standing arguments with a blatant misstatement of the law in its claim that emotional distress is an insufficient basis for standing. To the contrary, this Court has specifically found the opposite in a case under FCRA section 1681s-2(b). *Magruder v. Capital One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 8-9 (D.D.C. 2021) (allegation of emotional distress sufficient for Article III standing); *see also* M*iller v. Dish Network, L.L.C.*, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (same, collecting cases).

### B. Henkel May Recover Actual Damages Under The FCRA

The government next contends that Henkel may recover only for "pecuniary or economic harm" in this case and that she allegedly has not plead any such harm. ECF 23-1 at p. 21. The government is mistaken. Plaintiff may recover statutory damages of $100-$1,000 under FCRA section 1681n or actual damages (which are not limited to economic damages) under sections 1681n or 1681o of the FCRA.

First, the FCRA does not limit actual damages to "pecuniary or economic" damages as the DOE contends. It is true that the U.S. Supreme Court found in 2012 that under a different statute, The Privacy Act of 1974, the use of the term "actual

damages" was ambiguous and thus did not clearly waive sovereign immunity in a case seeking non-economic damages. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284 (2012). "When waiving the Government's sovereign immunity, Congress must speak unequivocally. Here, we conclude that it did not." *Id.* at 299 (internal citation omitted).

But 12 years later, the Supreme Court reached a different result with respect to the FCRA. *See Dep't of Ag. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 50-51, 49 (2024) ("The FCRA effects a clear waiver of sovereign immunity" and under the FCRA, "Congress has explicitly permitted consumer claims for damages against the government" and approvingly noting that "Like the Third Circuit, the Seventh and D.C. Circuits have held that the FCRA authorizes suits against government agencies *no less than it does private lenders*.") (emphasis added)).

It is also important to note that in the same 2012 decision where the Court found the Privacy Act's scope ambiguous, it also found that because "the term 'actual damages' has this chameleon-like quality, we cannot rely on any all-purpose definition but must consider the particular context in which the term appears." *Cooper*, 566 U.S. at 294. The Court noted that given the structure, purpose and history of certain statues, actual damages have properly been construed in some contexts to include non-economic damages. And as a prime example of such statutes, which differ from the Privacy Act, the Court cited to cases under the FCRA. *Id.* at 292-93 (citing *Thompson v. San Antonio Retail Merchants Assn.*, 682 F.2d 509, 513-514 (5th Cir. 1982) (*per curiam*) (explaining that, "[e]ven when there are no out-of-

pocket expenses, humiliation and mental distress do constitute recoverable elements of damage" under the FCRA); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-835 (8th Cir. 1976) (approving an award of damages under the FCRA for "loss of sleep, nervousness, frustration and mental anguish")).

Given this discussion in a 2012 Privacy Act decision and the Court's holding in 2024 in an FCRA decision where the plaintiff "sought money damages consistent with what the FCRA allows," *Kirtz*, 601 U.S. at 47, it is plain that the FCRA, unlike the Privacy Act, permits the government to be sued for both economic and non-economic damages.

This construction is entirely consistent with decades of jurisprudence about what "actual damages" means under the FCRA. The FCRA provides for the recovery of a broad range of actual damages. 15 U.S.C. § 1681n, 1681o (statutory provisions regarding relief available for willful and negligent violations, respectively). These can include everything from out-of-pocket losses and consequential damages to loss of reputation and emotional distress damages. *See Bryant v. TRW Inc.,* 689 F.2d 72, 75-76, 79 (6th Cir. 1982) (actual damages can be in the nature of embarrassment and humiliation); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (emotional distress damages available); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) ("Damages for . . . loss of reputation as a result of the false report . . . are recoverable under FCRA."); *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983) ("[A]ctual damages may include out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation, or

embarrassment."); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) ("damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses"); *Bach v. First Union Nat'l Bank*, 149 Fed. App'x 354, 358 (6th Cir. 2005) (upholding emotional distress damages, even in absence of economic damages).

A consumer may recover actual damages even if she is able to obtain credit after explanation of an inaccuracy. *See Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 969 (S.D. Ohio 1983). Time spent trying to resolve problems with a credit reporting agency is also relevant to actual damages awards. *See Stevenson v. TRW Inc.*, 987 F.2d 288, 297 (5th Cir. 1993); *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("there is no question that wasted time is a concrete harm," in FCRA case where consumer wasted time with futile disputes); *Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 372-73 (E.D. Pa. 2023) (wasted time and expense are real harms under FCRA).

Given this legal landscape, it is not appropriate for this Court to dismiss Plaintiff's non-pecuniary damages claims. Plaintiff alleges here that she had a "negative emotional response" was "distraught, dismayed, and distressed" and "upset" as a result of being portrayed in a false light after Defendant failed to correct its false credit reporting about her. ECF 20 at ¶¶ 102-104. She claims that Defendant's conduct caused "harm to credit reputation," *id.* at ¶ 90, and that it made her look like a spendthrift to existing and prospective creditors including "Apple Card

22

GS Bank," which reviewed her credit history several times between October 2023 and February 2024. *Id*. at ¶ 99.

The basis for these non-economic harms is set forth in detail in Plaintiff's Amended Complaint. Plaintiff spent a significant amount of time, effort, and resources trying to correct Defendant's false credit reporting. *Id*. at ¶¶ 75-87, 105-08. Despite Plaintiff's disputes, Defendant failed to correct a false credit reporting problem of its own creation, and this caused the above non-economic damages to Plaintiff. There are the types of damages that multiple circuit courts have upheld. *See supra*.

Furthermore, Plaintiff's Amended Complaint properly seeks "economic and pecuniary" damages as well. There can be no question that Plaintiff alleges that "Defendant's failure as a matter of policy and/or practice to correct the inaccurate Student Loan Information it had previously furnished . . . to one or more CRAs injured [her and class members] by wasting the time and resources they invested in their disputes." *Id*. at ¶ 105. Plaintiff explains in detail the time, paper, and certified mail postage she wasted as a result of Defendant's violations. *Id*. at ¶¶ 105-110. She also pleads that Defendant's conduct damaged her credit score and exposed her to higher interest rates, insurance premiums, and/or reduced credit limits. *Id*. at ¶¶ 95-99. These are exactly the types of harms that stem from false credit reporting and may fairly be characterized as economic or pecuniary in nature.

The types of damages alleged by Plaintiff here need not be crippling, and for this reason plaintiffs in class actions often elect, as is their right, to pursue statutory

damages of $100-$1,000 under FCRA section 1681n when they move to certify claims. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest [statutory] damages" of $100-$1,000). But that practical reality is not a basis for this Court to dismiss Plaintiff's actual damages claims. The government's motion must therefore be denied.

## C. <u>DOE Is Subject to Liability Under the FCRA</u>

### 1. **Defendant Is a Furnisher in Its Own Capacity**

The government's final argument is that even if it harmed Henkel, the DOE cannot bear liability as a furnisher under the FCRA. ECF 23-1 pp. 22-32. Defendant correctly notes that the FCRA does not define "furnisher." Regulations, however, do defining furnisher as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2(c); 12 C.F.R. § 1022.41(c). The Rule explicitly excludes from the definition users of consumer reports, CRAs themselves, consumers themselves, or individuals known to the consumer. Notably, it does *not* exclude those who may furnish information indirectly or through services.

This Court has cited with approval the legislative history of the FCRA, which noted that a "furnisher may be 'any person with relevant data about a consumer's financial activity[,]' and the 'most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and *government agencies*.'" *Alston v. LexisNexis Risk Sols. Inc.*,

24

No. 21-2322 (RBW), 2022 U.S. Dist. LEXIS 227178 at *11 (D.D.C. Dec. 16, 2022) (quoting H.Rept. 108-263, at 24) (emphasis supplied). *See also Chiang v. Verizon New Eng., Inc.,* 595 F.3d 26, 35 n.7 (1st Cir. 2010) (quoting legislative history). Under the applicable regulations, this Court's jurisprudence, and legislative history, therefore, the salient feature of a furnisher is its role as the source of the data for credit reports.

Here, Defendant's name appears on the credit report as the provider of the information, and the promissory note with Plaintiff defined Defendant to include its servicers. ECF 20 at ¶¶ 3, 65, 66. The Consumer Data Industry Association lists Defendant as a "reporter of federal student loan information." *Id.* at ¶ 8. Indeed, the violations in this case arose because Nelnet indicated that it had no authority to correct the data furnished by Defendant. *Id.* at ¶¶ 11, 13, 24, 85.

Additionally, the Higher Education Act requires Defendant—not its servicers—to "enter into an agreement with each consumer reporting agency to exchange information concerning student borrowers." 20 U.S.C. §§ 1080a(a)(2), (a)(3), (c)(1). Defendant likewise represented in its promissory note with Plaintiff that in the event of a credit dispute, "we are required to provide the agency with a prompt response. We respond to consumer reporting agencies using the methods established by those agencies." ECF 20 at ¶ 61.

Plaintiff has also pled that Defendant received the notice required under that section. Specifically, the statute requires that the CRAs "provide notification of the dispute to any person who provided any item of information in dispute, *at the address and in the manner established with the person.*" ECF 20 at ¶ 3; 15 U.S.C. §§ 1681s-

2(b), 1681i(a)(2)(A).  To the extent Defendant provided Nelnet's address for receipt of such notice, any notice to that address constitutes valid notice to Defendant.

### 2.  Defendant Is a Furnisher as Principal for Nelnet

#### a.  Nothing in the FCRA Precludes Vicarious Furnisher Liability: Sections 1681b and 1681d Provide No Guidance to Interpret Section 1681s-2(b)

In its analysis of vicarious liability under the FCRA, Defendant attempts to extrapolate from apples how to eat an orange.  Statutory interpretation requires consideration of the full context of the statute.  In this case, that consideration includes a recognition of the entirely different purposes of sections 1681b and 1681d on the one hand and section 1681s-2(b) on the other.  It is incumbent upon this Court to consider the full statutory context.  That, however, also means considering the distinctions between the purposes of each section.  *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.");  *United States v. Saffarinia*, 101 F.4th 933, 941 (D.C. Cir. 2024) ("With no basis in text or congressional purpose, we cannot adopt [an] interpretation of a different phrase in a distinct context to control the construction of" the statutory section at issue).

Sections 1681b and 1681d address procurement and/or disclosure of consumer or investigative reports.  Section 1681b's provisions that include the "cause to be procured" language referenced by Defendant apply specifically to reports used for

employment purposes, not to reports used for any other permissible purpose listed in Section 1681b(a). Similarly, Section 1681d says "procures or causes to be prepared" rather than procured, which targets the creation of the report in the first instance. Both of these sections reflect the reality that credit reports for employment and investigative reports are often one-off inquiries conducted through a third-party data broker. *See* Elizabeth Gravier, CNBC, "Can employers see your credit score?" (Oct. 21, 2024), *available at* https://www.cnbc.com/select/can-employers-see-your-credit-score/ ("many outsource to a third-party company"). As the data broker and report users interact on a limited-scope, transactional basis, no agency relationship would exist between them. Common law would be insufficient to impose liability on a user who orders a report from a third party without a sufficient permissible purpose. The FCRA, therefore, appropriately imposes liability on the end user of the report rather than just the intermediary.

In contrast, in the context of section 1681s-2(b), furnishers have an ongoing relationship with the CRAs such that they report information on, typically, a monthly basis. The information at issue is proprietary to the furnisher. The FCRA assumes, therefore, that the one furnishing the information is the entity that generates the information, or at least an entity so closely tied to the furnisher that it would require an agency relationship to have access to the information; no specific language would be required for such liability to apply.

Given the distinct contexts of these sections of the statute, sections 1681b and 1681d offer no guidance in interpreting section 1681s-2. The language used in 1681b

and 1681d does not signify the absence of vicarious liability in other portions of the statute but the presence in the employment screening and investigative report contexts of a third-party middle man. Stated otherwise, these sections extend the vicarious liability of common law rather than abrogate it. That common law liability remains implicit in section 1681s-2(b).

### b. Congress Has Not Expressly Abrogated Common Law

At minimum, Congress's message on vicarious liability is far from the "direct" pronouncement required to abrogate common law. "'[S]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.'" *United States v. Texas*, 507 U.S. 529, 534, 113 S. Ct. 1631, 1634 (1993) (quoting *Isbrandtsen Co.* v. *Johnson*, 343 U.S. 779, 783, 96 L. Ed. 1294, 72 S. Ct. 1011 (1952). Statutory silence is not sufficient to meet that high bar. *Id.* To the contrary, where Congress intended to abrogate other law through the FCRA, it did exactly that, expressly preempting most state law. *See* 15 U.S.C. § 1681t(b) (preempting certain state law). Defendant's implication by omission argument, cannot, therefore, displace the long-standing common law relating to vicarious liability.

### c. Prohibiting Vicarious Liability Would Create an Absurd Result

Defendant's proffered interpretation of the FCRA also runs headlong into the obligation to avoid an absurd or unjust result. *See Cannon v. Watermark Ret. Cmtys., Inc.*, 458 U.S. App. D.C. 378, 390, 45 F.4th 137, 149 (2022) ("statutes should be interpreted to avoid … unreasonable results, or unjust and absurd consequences.")

28

*Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 217 (D.D.C. 2011) ("Statutory interpretations that create such absurd results are strongly disfavored.") Importing a bar on vicarious liability into FCRA section 1681s-2(b), as the DOE now suggests, would create a shield for furnishers: any bank or other creditor could generate inaccurate data and simply retain an agent, with no discretion over the data or ability to correct it, to convey it to the CRAs, leaving consumers with no remedy whatsoever as to furnishers.

Such a reading directly contradicts to the purpose of the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).  *See also* 15 U.S.C. § 1681 (purpose of the FCRA); *Wilson v. CoreLogic Saferent, LLC*, No. 14-CV-2477 (JPO), 2017 U.S. Dist. LEXIS 162928, 2017 WL 4357568, at *4 (S.D.N.Y. Sept. 29, 2017) (the "FCRA is undeniably a remedial statute").

### d. Courts Have Found Vicariously Furnisher Liability to Be a Factual Issue

Courts have held that vicarious liability may apply to furnisher liability, finding questions of actual control to be issues of fact.  *See Ellis v. Pa. Higher Educ. Assistance Agency*, No. CV 07-04498 DDP (CTx), 2008 U.S. Dist. LEXIS 129710, at *18 (C.D. Cal. Aug. 12, 2008); *Haddad v. Charles Riley & Assocs.*, No. 09-12597, 2010 U.S. Dist. LEXIS 103623, at *37-38 (E.D. Mich. Apr. 12, 2010) (finding a question of fact as to whether principal could be held liable for reporting by independent contractor, and finding that independent contractor status was not dispositive of

agency relationship); *Feldmann v. Lakeview Loan Servicing L.L.C.*, 2021 WL 1627048 (W.D. Wash. Apr. 27, 2021) (denying mortgage servicer summary judgment; servicer could be vicariously liable for sub-servicer's furnishing violations "[b]ecause a reasonable juror could determine that [the mortgage servicer] maintained control over [the sub-servicer] throughout this process"), *on reconsideration in part*, 2021 WL 2036703 (W.D. Wash. May 21, 2021).

In examining liability for reporting by a student loan subservicer, the court in *Ellis* specifically noted the importance of vicarious liability in such contexts: "The application of vicarious liability under the FCRA is necessary because it would otherwise be very difficult to hold a corporation liable under the statute." *Ellis*, 2008 U.S. Dist. LEXIS 129710 at *19-20 (cleaned up). Where, as here, the principal is the source of the inaccuracy and the impediment to correcting it, the importance of vicarious liability is clear.

### e. Plaintiff Has Adequately Pled Defendant's Control over Nelnet

Finally, Defendant's unsupported assertion that Nelnet is merely an independent contractor for which Defendant can have no liability ignores the well-settled law that independent contractors may be agents if the principal exercises sufficient control, as well as other avenues for liability under agency law. *See* Restatement 2d of Agency, § 2(3) ("An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the

performance of the undertaking. *He may or may not be an agent.*) (emphasis supplied).

The Restatement of Agency sets forth ten "matters of fact," adopted by the D.C. Circuit, for determining whether "one acting for another is a servant or an independent contractor," including "the extent of control which, by the agreement, the master may exercise over the details of the work."  Restatement 2d of Agency, § 220; *Lancaster Symphony Orchestra v. NLRB*, 822 F.3d 563, 569 (2016).  "While no single factor is controlling, the decisive test is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." *Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp.*, 758 F.3d 378, 386 (2014).  *See also* Restatement 2d of Agency, § 14 Cmt. a.[4]

Here, Nelnet specifically wrote to Plaintiff that it was acting "[o]n behalf of ED" in reporting her student loan to the CRAs.  ECF 20 at ¶ 6.  Defendant owns and controls all of the credit information that appears on borrowers' credit reports.  *Id.* at ¶¶ 24, 42-43.  Defendant dictates to servicers the format for credit reporting and how to report specific scenarios.  *Id.* at ¶¶ 48, 57-60.  Nelnet has no discretion whatsoever in how or what to report, and requires approval from Defendant to make any changes to credit reporting.  *Id.* at ¶ 24, 85. Defendant also provides detailed prescriptions for

---

[4]     Though the federal government may at times get more leeway with respect to agency relationships for torts, it is entitled to no such deference under the FCRA.  *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 144 S. Ct. 457 (2024).  Indeed, the Higher Education Act specifically states that ""nothing in this subsection shall be construed to affect any otherwise applicable provision of the Fair Credit Reporting Act[.]" 20 U.S.C. § 1080a(a)(3).

how Nelnet must handle payments, data, correspondence, and a host of other responsibilities. *Id.* at ¶ 40. Notably, in its agreement with Plaintiff—the promissory note—Defendant defined itself to include its servicers, creating at least apparent authority.

At minimum, as discussed, *supra*, the degree of control Defendant exercises over Nelnet is a question of fact not appropriate for determination in a motion to dismiss.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's arguments fail, and this Court should deny the Motion in full.

Dated:    March 12, 2025                    Respectfully submitted,

DANIELLE HENKEL, *individually, and on behalf of all others similarly situated*,

By:    <u>/s/ John Soumilas</u>
James A. Francis (admitted *pro hac vice*)
John Soumilas (admitted *pro hac vice*)
Jordan M. Sartell (admitted *pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

Courtney L. Weiner (#992797)
LAW OFFICE OF COURTNEY WEINER PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
T: (202) 827-9980
cw@courtneyweinerlaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 12th day of March, 2025, I caused the foregoing to be served via CM/ECF on all counsel of record.

<u>*/s/John Soumilas*</u>
John Soumilas